The opinion of the court was delivered by
Duncan, J.
By agreement of parties, all objections- as to the form of pleading are waived, and the cause is to be decided on its merits. The case then is this. John Black, the defendant in error, sold certain goods to Nathan Smith, one of the plaintiffs in error, and took his note, which he put in suit, and prosecuted to judgment, on which, however, he has obtained no satisfaction. Af-terwards, supposing Newberry Smith, the other plaintiff in error, to be a secret partner, he-instituted this action against both. It is to be taken for granted, that when the goods were sold, the note given, and judgment obtained, the fact of Newberry being a dormant and secret partner was unknown to the defendant in error; and that the goods for which the note was given, were bought on account of the partnership. If the action can be supported, it excites our wonder, that in a matter which must so frequently have occurred, no trace of the doctrine isto.be found in the works of any author, nor precedent in any book of reports; and this silence, though it is not conclusive, yet it affords cogent proof against the action. It is, at least, incumbent on the plaintiff, to show some clear, legal principle, on which it can be supported, and in my humble judgment, as it is without precedent to support it, except one solitary decision, so it is without legal foundation to rest upon. For the first time, the doctrine was broached, was in this country in the year 1810, in the Supreme Court of the United States, Sheehy v. Mandeville, 6 Cranch. 253., and there it was decided, *144 “that a several suit and several judgment against one of two malt ers of a promissory note, was no bar toa joint action against both.” This is a precedent from a very high source, and commands great deference and respect, from the characters of the distinguished and enlightened men who composed that court. Yet whatever importance and consideration we may attach to all their decisions, they are not, in this instance, binding authority.
The same question came before Chancellor Kent, in 1820, S. & E. Penny v. Martin and others, 4 Johns. Ch. 566. It is the same case in specie as the present. The plaintiffs there brought a suit at law against two partners, as partners in trade, under the firm of R. & M., and recovered judgment, from which they were unable to obtain satisfaction, and afterwards discovered, for the first time, that R. L. & S., three other persons, were dormant partners with R. & M., and jointly interested together in the transaction, out of which the plaintiffs’ cause of action arose, and the Chancellor held, he had no jurisdiction to give relief against the dormant partners. It is worthy of remark, that the case of Sheehy v. Mandevi'lle, was not noticed by the Chancellor, and though he gave no express opinion, whether the remedy at law was lost, yet from his course of reasoning, and the note to the report, we clearly discover the impression, that an action could not be supported at law. For in the note, he mentions the case of Consequa & Willing, decided in 1816, 1 Peters Rep. 301. and said, he had not met with any other opinion or dictum that applied fully to the question. Kuhn, a dormant partner of Willing & Francis, was offered as a witness, and objected to, as interested, because Willing and Francis had given a note to Con-sequa, on which they were sued, and a verdict rendered; and it was alleged, if Consequa was not able to obtain satisfaction against them, he might afterwards sue Kuhn, as a dormant partner, and WASHINGTON J. held, that a judgment on the note, against Willing & Francis, would as completely extinguish the original debt, as if they had given a bond for it, and that if Consequa brought an action against Kuhn for it separately, he might defeat it by a plea in abatement, and a judgment in favour of Consequa, would be a bar against any action he might bring against the three partners, Willing Francis & Kuhn, and the' Judge denied, that though Con-sequa might have no remedy at law against Kuhn, that he could be relieved in equity by shewing his ignorance that Kuhn was a dormant partner. This decision is of immense weight here, where we exercise a mixed jurisdiction of law and equity, and where if it was competent to a Court of Chancery to grant relief, this court would in some form of action reach the equity. For though our courts of law exercise chancery powers by a different medium, yet they are as much bound by rules of equity, as a chancellor, and will never go beyond the limits of chancery powers. As these are the opinions of two very learned Judges, that the action would not lie at law, nor relief be granted in chancery, and one of them Mr. *145 Justice WashingtoN, who decided the case of Sheehy v. Mandeville, and in 1821, the same question was decided in the same way in the Supreme Court of New-York. Robertson v. Smith and others, 18 Johns. 459. That case was fully discussed by the counsel, and C. J. Stbncer, who delivered the opinion of the court, embraced in the comprehensive view he took of the subject, all the authorities bearing on the question, and considered the decision of the Supreme court of the United States, with equal cam-dour and ability; expressing his dissatisfaction with the train of reasoning adopted in that case. To his very luminous and able arguments I refer generally, as conveying my own opinions. To the terms in which it was delivered, I could add no force, and it would be doing injustice to the argument to attempt to abridge it. I will, therefore, content myself with stating other reasons against this action: The want of notice is mainly urged as the ground of the action. No notice, is generally a defensive affirmation. It is used as a shield, and not a sword. It is always a negative allegation, consisting of a denial, and not susceptible of proof. To undertake' to prove it against a mere denial, would be a dangerous matter. As it is used in chancery* it requires the oath of the party. But at common law, and even in our blended jurisdiction of law and equity, his opponent could not require that; and to put him to proof of the fact, the precise time when notice was given against a naked allegation, without either oath or any proof, would be contrary to all law, and all equity* as it would be requiring of him an ■ absolute impossibility.
The spark of equity must be struck out of the want of notice. Let us advert to the consequences, and see first whether to allow this would not be departure from all our legal notions of actions, either on torts or contracts. In torts, the principle is well settled; if a plaintiff has in a former action recovered damages for a battery, a judgment for them, he cannot afterwards bring another action for the same battery; because afterwards* in consequence of it, he lost a piece of his scull. There is an authority to show, that subsequent damages create no new cause of action, Fetter v. Veal, 12 Mod. 543. There the cause of action arose from the beating, and not from the consequences which ensued from it. So here the cause of action was created by the breach of the contract, and not by the subsequent discovery that Newberry was a partner. The cause of action accrued at the moment there was a breach of the contract: the subsequent discovery gave no new substantive cause of action. If the consequence of a tort gave a new cause of action, then the statute of limitations would only accrue from the time it was discovered, and so in contracts, • the discovery of a new party, or some occult matter which produced a subsequent damage, would give a new cause of action. Now all this is contrary to every received opinion with respect to judgments. No principle is better settled than that a judgment once rendered absorbs and merges the *146 whole cause of action, and that neither the matter, ñor the parties, can be. severed, unless indeed where- the cause of action is joint and several, which certainly actions against partners are not. Transit in rem judicatam. There might be a recovery at the end of sixty years. The right of action would never be closed by any delay or any number of judgments. The rem judicatam would never close, but be a wound never healed, opening on every new discovery of a party. It would indeed be the. everlasting suit. As suppose there were ten partners, nine of. them dormant, from A. to L; A., the ostensible partner is first sued, judgment obtained, but no satisfaction. At the end of six years R. is discovered, sued, and judgment against him, with A. and so on every sixth year, until there are ten actions and ten judgments on one original action. For if the argument is worth any thing, it goes to the full extent, that as soon as a new partner is discovered, a new cause of action arises, and so on ad infinitum. It is by putting an extreme case, the solidity of any position, the soundness of any argument is tested. For if it will not answer every case, no dependence can be placed on it. When the law says, that limitation only runs from the time of discovery of a fraud, and that no length of time" will protect a fraud, it proceeds on a different principle, than want of notice. It is on the ground of actual fraud, practised by one contracting party on another. But in the case of a dormant partner, there is no actual fraud committed on the vendor; he does not give credit under the belief that there is a secret partner. If he did, then as to him there was no dormant partner. Ignorance of a fact will not render a transaction fraudulent. It is the concealment of a fact, which if it had been communicated, and was the duty of the party to communicate, the other would not have entered into the contract; but this never can apply to latent partnerships. Black never inquired whether Nathan Smith had partners; he gave the whole credit to him. Besides, on whom are the costs of the different actions to be levied? Are they to be recovered from the parties to each action, or to be accumulated and fall on the heads of the ten defendants in the tenth action? I am of opinion, that the law will not suffer this splitting up either of actions or severing of persons, and that where the cause of’ action is a joint one, that a judgment once rendered, extinguishes the original cause’ of action, and is a bar, not only to a subsequent action brought against the same persons, but against all others; that the judgment puts an end to all litigation on the subject matter of the action, and that a discovery of a new party, or the happening of new damages does not give a new cause of action, and the judgment should be reversed and judgment rendered for the defendants. a
Judgment reversed and judgment rendered for the defendants.

(a) ¿Vote by Dukcah, J. Since this opinion was delivered, I find that in 1816, the same point was decided in the Supreme Court of Massachusetts; Asa Ward v. Henry *147 and Thomas Johnson, 13 Mass. 148. It was there determined, that to an action against two on a joint promise, the plea of a former judgment against one of them, upon the same promise, was a good bar. There too Thomas was a dormant partner, and at the commencement of the first action, was unknown to the plaintiff, and Wjede, Justice, who delivered the opinion of the court, said, that the . contract as far as respects Henry, must be considered as merged in the former recovery against him, and no instance had been proved, nor could be found, of two judgments being held good against the same person for- the same cause of action.