REYNOLDS AND REYNOLDS *against* P. & S. CLEVELAND, impleaded with S. I. ANDRUS.

What is sufficient proof of a limited partnership.

Partners are all liable for articles furnished for the benefit of the firm, though the vendor does not know of the existence of the firm, and though he suppose himself dealing with, and give credit to an individual partner by charging him alone in his books.

ASSUMPSIT for two run of Burr mill stones. The declaration contained the common counts for the mill stones, at a price stated, and on a *quantum meruit*. The defendants severally pleaded *non assumpsit*, with other pleas.

And so, *it seems*, though the agreement be reduced to writing between the vendor and the individual partner, and signed by the latter with his own name only.

On a sale, with warranty of the article sold, upon a credit for cash, after the credit has expired, the goods being delivered, and the contract thereby executed, the vendor may, in a suit for the price, declare in *general indebitatus assumpsit*, for goods sold.

The cause was tried before Savage, Ch. J. at the Albany Circuit, April, 1823.

The plaintiffs proved by Joseph Spencer, that in January, 1820, and before and after, the defendants were reputed partners in a mill at Rochester; and that S. Cleveland had the direction and management of it. They also gave in evidence a letter from S. Cleveland to Jno. Townsend, Albany, dated at Rochester, June 14th, 1819, requesting him to sell on credit, castings for a flour mill, to be built at Rochester; and stating that Mr. Patterson had recommended to get the castings of him; another letter from S. Cleveland dated at Rochester, July 20th, 1819, to Townsend, acknowledging that he had been apprised of his prices and credit; acceding to them, and enclosing a bill and directions relative to the castings, and stating that the gentlemen concerned with him were S. I. Andrus and P. Cleveland.

The plaintiffs then called Erastus Corning, who testified that he was acquainted with the defendant P. Cleveland; that all the defendants were reputed to be partners and joint owners in a mill at Rochester, in 1820; that in January of that year, P. Cleveland bought of the house in Albany to which the witness belonged, on credit, bolting cloths for the mill at Rochester, which were charged to the firm; that a suit was brought against all the defendants for the amount of the bolting cloths, and a judgment recovered against them, which was collected; and that when he bought the bolting cloths, he told the witness, that he wanted to purchase two run of Burr mill stones for the same mill. The witness told him, that the plaintiffs were in the habit of furnishing mill stones, on the recommendation of the witness; and if he wished, the witness would send for the plaintiffs. The witness was in the habit of acting as the agent of the plaintiffs in the sale of their mill stones. P. Cleveland stated that the mill stones were for the company at Rochester, and gave the witness the names of the three defendants as constituting the company; and referred the witness to Mr. York, for their standing and responsibility; that one of the plaintiffs on being sent for, called at the witness's store, where P. Cleveland stated,

in the presence of the witness, the size and quality of the stones he wished to purchase, and inquired the price; and the plaintiff agreed to make them for $660. P. Cleveland also stated to the plaintiff, that the stones were for the mill at Rochester; that the plaintiffs, in this instance, relied altogether upon the witness in giving the credit, which would not have been given to P. Cleveland individually. P. Cleveland requested the plaintiff to go with him to his lodgings, and reduce the agreement to writing, to which the plaintiff agreed. The memorandum of the agreement was afterwards delivered to the witness by Mr. York, through whom it was sent by P. Cleveland, to enable the witness to obtain the stones and forward them; which he did to the company in Rochester, in July, 1820. P. Cleveland told the witness that the stones were received there; and that the company would soon pay for them. The agreement was left by Mr. York with the witness; but he does not know what has become of it. It had been called for by P. Cleveland, or some person for him, but could not be found. It was an agreement with P. Cleveland; and contained a warranty of the quality of the stones. There was no signature to it, besides that of P. Cleveland. It was not signed by the plaintiffs or either of them.

The defendants' counsel moved for a nonsuit, on the ground that the plaintiffs ought to have declared on the special agreement; and also that as the agreement was made with P. Cleveland individually, the action could not be sustained against all the defendants. This motion was overruled.

The defendants then called H. G. Wheaton, who testified that he went to the plaintiffs with the defendant S. Cleveland; and that one of the plaintiffs stated that there was an agreement in writing concerning the mill stones; that by the agreement, the plaintiffs undertook to provide the stones, and to warrant them; and P. Cleveland undertook to pay for them; that one of the plaintiffs showed his book in which there was a charge of the mill stones to Mr. Cleveland of Ogdensburgh. This book was produced, on notice for that purpose; and contained a charge of the mill stones thus:

" 1820, January 21, sold to Mr. Cleveland of Ogdensburgh, two run of 5 feet stones at 330 the pair —— 660."

Corning was then again called ; and testified that P. Cleveland lived at Ogdensburgh ; and S. Cleveland at Rochester ; that one of the plaintiffs agreed to warrant the stones. The witness supposed that this plaintiff depended on the witness for the responsibility of the purchasers of the stones ; but the witness did not make the bargain. That was made by one of the plaintiffs and P. Cleveland. The witness would not have recommended the plaintiffs to trust P. Cleveland alone ; who, at the time he purchased the bolting cloths, said that the stones were for the mill at Rochester ; that the witness did not know that the plaintiffs had knowledge of any person concerned beside P. Cleveland. Nothing was mentioned when the plaintiff was present, and when he conversed with the plaintiff in the store of the witness, about any other persons concerned in the mill.

The plaintiff then called D. Sibley, who testified, that he was acquainted with S. Cleveland, and the defendant, Andrus ; and had heard S. Cleveland say, that the defendants were jointly responsible for all the machinery in the mill; that P. Cleveland had lately removed to Rochester.

The Judge charged the jury that Corning had acted as a sort of agent for both parties ; that they should inquire whether the stones were delivered in consequence of the written agreement ; that if they were delivered to the firm the plaintiffs were entitled to recover.

The jury found a verdict for the plaintiffs, for the price of the stones, and the interest.

*H. Bleecker*, for the defendants now moved for a new trial. He said the contract was with P. Cleveland individually, and the suit should, therefore have been against him alone.(a)  It was a special agreement in writing with warranty ; and the suit should have been brought upon the agreement, which was not reached by the common counts. Had this been a covenant, clearly the partners could not be sued ; and is not the remedy equally controlled by a special agreement ? Are not the plaintiffs holden to proceed against the actual contracting party, whether they knew of the

(a) *Manahan* v. *Gibbons*, 19 John. Rep. 109, 112. *Livingston's Ex'rs.* v. *Tremper*, 11 id. 101. 1 Chit. Pl. 31, 32. *Yates* v. *Lansing*, 8 John. Rep. 289

firm or not ?   The agreement being special, differs the case from one of dormant partners.   There the recovery is upon the implied contract.(b)   Here is no room for implication. All the stipulations between the parties are express.(c)   The remedy on the warranty, for instance, would be confined to P. Cleveland alone, for he alone was the vendee, and responsible for the price.   The plaintiffs should have declared on the special agreement, averring that the warranty had been fulfilled on their part, as a condition precedent.   No recovery could be had, unless the stones were as warranted.   It makes no difference whether the plaintiffs knew of the partnership or not.   P. Cleveland could not plead a recovery in this suit in bar to a future action against him alone.   The partners never supposing themselves liable as such, the fair presumption is, that, as between them and P. Cleveland, they have closed the concern, accounting to him for this purchase as an individual one : and they ought not to suffer through the false appearance held out by the plaintiffs.   The plaintiffs could not resort to the general counts.(d)   That these were inapplicable, he cited *Raymond* v. *Bernard*,(e)  *Fenton* v. *Holloway*,(f)  *Linningdale* v. *Livingston*,(g)  *Jennings* v. *Camp*,(h) and *Clark* v. *Smith*.(i)

The Judge erred in charging that Corning was the agent of both parties.(j)

The verdict is against the weight of evidence ; and the Judge should have directed the jury to find a verdict for the defendants.

*W. Esleeck,* contra.   The partnership of the defendants was fully established by the letters and confessions.   Then the acts of P. Cleveland are binding on all.   It was not his intention that credit should be given to him alone.   If it was, why did he disclose the names of his co-partners ?   The contract being signed by him alone, can make no difference. If it was a contract for the benefit of the firm, all are bound ; and those not named may be sued as dormant partners. Admit that the plaintiffs knew of the firm.   They also knew that the stones were for the benefit of the mill ; and that all the partners would be liable.(k)   The delivery being to all

(b) 1 Mont. on Partnership, Amer. ed. 160, and the cases there cited.
(c) *Evans* v. *Drummond,* 4 Esp. Rep. 91-2.   *Reed* v. *White,* 5 id. *Newmarch* v. *Clay,* 14 East, 239.   *Mead* v. *Tomlinson,* 1 Day's Rep. 148.   *Ripley* v. *Kingsbury,* id. 150, note (a).   *James & Flack* v. *Hackley,* 16 John. Rep. 273.

(d) *Robertson* v. *Lynch,* 18 John. Rep. 451, 456.
(e) 12 John. Rep. 274.
(f) 1 Starkie, 126.
(g) 10 John. Rep. 36.
(h) 13 id. 94, 97.
(i) 14 id. 326.
(j) *Guy* v. *Oakley,* 13 John. Rep. 332, 334.  *Foot* v. *Sabin,* 19 id. 154.

(k) *Saville* v. *Robertson,* 4 T. R. 720, 728.

the defendants, gives character to the transaction ;(*l*) and even the promissory note of P. Cleveland would not have discharged the firm,(*m*) unless the plaintiffs had declared expressly that they had intended to look to him alone. If this had been so, we admit, they having at the same time a knowledge of the firm, this written agreement might have operated against him only. The form of entry in the book, is by no means conclusive as to whom the credit was given. It is certainly not so strong as the case of taking an individual promissory note.

The contract being executed by a delivery, the general counts are proper.(*n*) The cases cited against us upon this point, are where the contract was still open and executory when the action was brought.

As to the questions raised upon the evidence, it is a sufficient answer that the jury have passed upon it. They have decided that the defendants were partners; and that credit was given to them as such.

*Bleecker*, in reply, said that, although Andrus was not arrested, yet the existence of the firm must be as clearly established as if he had been regularly brought into Court. The claim is treated by the plaintiffs as joint, against all three; and unless it is made out in that shape, the verdict should be for the defendants. Now the letters or declarations of the Clevelands can not be received to implicate Andrus, from whom we hear nothing about his being a partner.

WOODWORTH, J. (after briefly stating the facts.) It is contended by the defendants, that the contract was made with P. Cleveland individually, and that the suit ought to have been against him alone. He was the ostensible person who made the contract. It is also evident that Reynolds did not know there were other persons connected with him, as partners in the mill. I presume Reynolds was satisfied as to his responsibility, without making any particular inquiry. Corning says, in this instance, they relied altogether on him in giving the credit; that the credit would not have been given to P. Cleveland individually, but no communication was made to the plaintiffs

ALBANY,
Feb. 1825.

Reynolds
v.
Cleveland.

(*l*) Id. J Com. on Contr 277. Watson's Law of Part. 129.

(*m*) *Scher merhorn* v *Loines*, 7 John Rep. 311 Watson's Law of Part. 130 1 Esp. Dig. pt. 1, 228. Gould's ed.

(*n*) 1 Ch. pl. 338 and the cases there cited. Bull. N. P. 139. *Payn* v. *Bacomb*, Dougl. 651. *Kelley* v. *Foster*, 2 Bin. Rep. 4. *Alcorn* v. *Westbrook*, 1 Wils. per Dennison, J. 117. 1 Dunl. Pr. 270. *Tuttle* v. *Mayo*, 7 John. Rep. 132. *Linningdale* v. *Livingston*, 10 id 36. *Porter* v *Talcott*, 1 Cowen's Rep. 359.

respecting the partners. That the defendants were jointly concerned at the time, and that the stones were received is not questioned. From this statement, it appears to me that all the defendants are liable. A partnership is a joint undertaking to share in the profit and loss. The defendants stood in that relation to each other, not as general partners, but as jointly concerned in erecting a mill and procuring machinery; they were partners to this extent, (1 Esp. Rep. 29,) and became jointly responsible for articles purchased by one of the partners, and applied to the benefit of the concern. The law is well settled, that if one partner order goods himself, without disclosing the names of the other partners, and the goods be afterwards delivered to them all, they are all liable ; because the delivery and the sale are considered as forming one entire contract. In such case, the one partner, who buys the goods, does not contract for himself, but on account of the partnership. This doctrine is fully recognized in the books. (*Saville* v. *Robertson*, 4 D. & E. 728. *Schermerhorn* v. *Loines*, 7 John. 311. *Muldon* v. *Whitlock*, 1 Cowen, 390.) It cannot be pretended that the plaintiffs have done any act to discharge the partners. Admitting that a special contract had been signed by the plaintiffs and P. Cleveland, it would not have that effect, unless it appeared that the plaintiffs had taken him exclusively for their debtor, knowing that there were other partners.

It is also urged that the action ought to have been commenced on the special agreement in writing.

I have not discovered any evidence that there was a written contract signed by the plaintiffs. The writing delivered to Corning had not their signature ; it is from that fact to be inferred, that Cleveland merely noted down by way of memorandum, that Reynolds was to deliver the stones and warrant them. When Reynolds afterwards admitted that there was an agreement in writing, the presumption is, he had reference to the paper delivered to Corning, for there is no legal evidence of the contents of any other. If Reynolds had in his possession a written contract, he was not called on to produce it. Without that, the defendants cannot give parole evidence of the contents

But if it be admitted that there was a written contract corresponding with the statement of Reynolds, it is not a valid objection to the recovery. Where the evidence is sufficient to support the general count, supposing the plaintiff had not declared on the special agreement, he is entitled to recover without any attempt to support the agreement. (7 John. 36. 10 John. 132. 4 B. & P. 351. 5 Mass. 391.) There is no special agreement laid. Does the evidence support the general count? The plaintiffs agreed to deliver the stones for a certain price; after delivery the defendants became liable in *indebitatus assumpsit.*

The plaintiffs might declare by a general count, in the same manner as if there had been a delivery in the first instance, and not an agreement to deliver. That part of the agreement relating to a warranty, is a distinct subject. It may or may not entitle the defendants to an action to recover damages. It is not however so connected with the sale of the mill stones, that the plaintiffs' right to recover for the goods sold, is in the least obstructed by the fact of a warranty. The evidence, therefore, is clearly sufficient to support the general count; for the contract was executed on the part of the plaintiffs. There was nothing more for them to perform. When the contract is executed on the part of the plaintiff, he may declare generally. The law raises a duty for which assumpsit will lie. (4 Binney, 4. 1 Cowen, 378. 1 Chitty, 338. 1 B. & P. 397.)

I am of opinion that the motion for a new trial be denied.

SUTHERLAND, J. The partnership of the defendants, at the time when the contract for the mill stones was made by P. Cleveland; and also when they were delivered, is sufficiently established by the evidence; so that they were, in fact, purchased for the use of the firm, though the existence of the firm does not appear to have been known to the plaintiffs; and they were therefore, charged to P. Cleveland only. Independent of the written, special agreement, and striking that out of the case, I think it is clear that the defendants are liable. The contract was for the benefit of the firm; and within the scope of the partnership.

The partnership was in a mill, and the contract for mill stones, an article of indispensable necessity in the prosecution of the business. It was a contract, therefore, which each partner had authority to make for the whole. It is then, in principle, a case of *dormant* partners, in which a contract within the scope of the partnership, made by the ostensible partner in his own name, is sought to be enforced against the firm. There can be no doubt of the liability of the firm in such a case. Though the goods be furnished on the credit of the ostensible partner only, the law implies a promise to pay for them, on the part of all those who are entitled to share in the profits. (*Saville* v. *Robertson*, 4 T. R. 720, 726, 728, per Ashurst and Buller, Js. *Hoare and others* v. *Dawes and another*, Doug. 371. Watson, L. P. 46, 168, 169.) In *Schermerhorn* v. *Loines*, (7 John. Rep. 311,) it was held that where a person supplied stores to a ship, of which there were several owners, on the order of one of them, who acted as ship's husband, and took his note in payment, and gave a receipt in full, it was no discharge of the other owners, especially as it did not appear that the plaintiffs knew, at the time, that there were other owners; and the note not having been paid, a recovery was had against all the partners upon the original cause of action. The same principle was established in *Muldon and Montgomery* v. *Whitlock*, (1 Cowen, 290.)

But it is said the action should have been upon the written memorandum of the agreement, made at the time of the sale. What that memorandum was, is very imperfectly disclosed by the evidence. Corning however, who is the only witness that ever saw it, swears expressly that it was not signed by Reynolds; and that it was left in the possession of P. Cleveland; and contained a warranty of the quality of the stones on the part of the Reynolds; that it was sent to the witness by P. Cleveland, to enable him to obtain the stones, and forward them to the defendants. This evidence leaves it extremely questionable whether the memorandum contained any agreement whatever on the part of P. Cleveland, to pay for the stones. It was left in his possession, not to be signed by Reynolds, although it is said to contain a warranty on his part. It does not appear to have specified either the price,

or the terms of payment. It was probably no more than a memorandum on the part of Cleveland, himself, of the quality and description of the stones; and that the plaintiff had agreed to warrant them. The parties agreed upon the description and price of the stones in the presence of Corning, when Cleveland proposed that they should go and reduce it to writing; upon which they left the store of Corning; and the only evidence that they did reduce it to writing, is, that P. Cleveland, some time afterwards, sent the *memorandum* in question to the witness. It does not appear to be in the hand-writing of Reynolds; and it is expressly shown that it was not signed by him. There is not a particle of evidence that he ever saw, heard of, or assented to it. I do not think, that upon this evidence a jury would be warranted in saying that there was any written contract between the parties. This view of the subject disposes of the objection.

But admitting a special agreement to have been shown: every thing which, so far as appears, it imposed upon the plaintiffs to do, has been done by them. The stones were delivered to the plaintiffs; and nothing remains to be done except the payment of the consideration money, on the part of the defendants. In such cases, the general count of *indebitatus assumpsit* is sufficient, without noticing the special agreement. This subject was maturely considered by the Court; and all the cases looked at in *Porter* v. *Talcott*, (1 Cowen, 359.)

But it is said that the special contract contained a warranty on the part of the plaintiffs; and if they had declared specially, they must have averred and shown performance on their part. If it had been averred, I apprehend the delivery of the stones to the defendants, and their acceptance of them, without complaint, would be, *prima facie*, evidence of a compliance with the contract in that respect. That is shown in this case. If they were not made according to contract, the defendants were at liberty to show it.

SAVAGE, Ch. J. concurred in the result of these opinions.

New trial denied.