Baldwin, J.
The liability of a dormant partner depends not upon the terms, or the form, or the dignity of the contract between the creditor and the ostensible partner, but upon the relation which the dormant partner bears to the subject of and the parties to the contract. The creditor, ignorant of the existence of the dormant partner, has of course no transaction whatever with him, but deals exclusively with the ostensible partner, looks to his credit and responsibility alone, and never speculates upon the mere possibility of a dormant partner who may thereafter be accidentally discovered. The law subjects the dormant partner upon considerations of justice and policy. It is just that he who participates in the benefits should also be responsible for the engagements of the concern; and it would lead to much inconvenience and fraud, if the demands of creditors, growing out of the partnership business, should be affected by the secrecy of the connexion between the partners. This liability of the dormant partner, by operation of law, cannot be frustrated by any arrangements between the creditor and the ostensible partner; for such, in the nature of things, cannot be the intent of the creditor; and though it may be and usually is the intention of the ostensible as well as the dormant partner, that very intention it is the object of the law to overrule and defeat. It follows that all such arrangements, of whatever nature, whether by the separate security of the ostensible partner, or otherwise, are merely collateral to that joint undertaking which the law forces upon the members of the firm; an undertaking based upon the consideration which has enured to the benefit of the partnership, and governed by a rule broader than the stipulations of contracts, “ qui sentit commodum sentire debet et onus.”
*544 The remedy, however, against the dormant partner must conform to his joint responsibility, and he cannot be sued alone, unless the objection be waived by his failure to plead it in abatement. The creditor may bring his action against the dormant and ostensible partners upon their joint implied promise, raised by the law out of the joint consideration; as where goods are sold or money advanced to the partnership, though without the creditor’s knowledge of its existence at the time of his thus dealing with the ostensible partner. Or, where there is an express contract, the terms of which embrace the dormant partner, though unintentionally, as if there be several ostensible partners and also a dormant partner, and a security be given by the partnership, for example a promissory note payable by A. B. & co. or A. B., C. D. & co. the creditor may join the dormant partner in an action thereupon, inasmuch as he falls within the description of the firm. But if the terms of the security do not embrace the dormant partner, as if it be made payable by A. B. or by A. B. and C. D. the ostensible partner or partners, the dormant partner cannot be joined in an action thereupon.
The liability of the dormant partner, moreover, is not absolute, but dependant upon the election of the creditor; and that election must be made in due time, and by a proper course of proceeding. In Hoare v. Dawes, 1 Doug. 371. it was said by lord Mansfield, that a dormant partner is liable when discovered. But I do not understand him to mean whenever discovered, or whatever may have been the proceedings against the ostensible partner; but only that though the dealing has been with the ostensible partner alone, yet the dormant partner may be subjected, if discovered. The creditor must however take care that he do not, by proceeding upon the joint contract, implied or express, against the ostensible partner alone, thereby lose his remedy against the dormant partner. If he brings his action upon the *545 implied promise, that being joint, he must not omit the dormant partner; for if he proceeds to judgment against the ostensible partner alone, he cannot afterwards maintain an action against the dormant partner, who may meet a separate suit by a plea in abatement, and a joint suit by shewing that the promise is no longer joint, it having been dissevered by the proceeding against his codefendant, as to whom transit in rent judicatam. So if the creditor brings his action upon a joint express promise, as in the case above supposed of a note payable by A. B. & co. or A. B., C. D. & co. the like result will follow from a separate judgment against the ostensible partners : another action cannot be subsequently maintained upon such joint promise. And in neither case will the objection in the subsequent action be answered by saying, that at the time of the separate judgment the dormant partner had not been discovered; for whether that has been the fault or the misfortune of the creditor, the recovery already had against the ostensible partner or partners presents an insurmountable obstacle; inasmuch as the law does not tolerate a second judgment against the same person upon the same cause of action. But where the express promise excludes the dormant partner, as in the case of a note given by the ostensible partner alone, a recovery thereupon against the latter presents no difficulty in the way of a subsequent action against him and the dormant partner, upon their joint implied promise; for a judgment upon a collateral security is no bar to a suit upon the original cause of action. Drake v. Mitchell, 3 East 251.
The case before us is unembarrassed by any separate proceedings on the part of the creditor against the ostensible partner. It is simply the case, as presented by the special verdict, of a sale of goods to the ostensible partner for the use and benefit of the partnership business, and a separate security taken from the ostensible partner therefor, without any knowledge at the *546 time on the part of the creditor that the dormant partner was a member of the concern. No recovery has been had nor action brought upon the separate security °*" ostensible partner, who has died ; but the creditor, on discovering the dormant partner, has brought this action against him as the surviving member of the firm, upon the joint promise implied by law.
If the separate security given in this case by the ostensible partner were by simple contract, it is quite clear that the dormant partner would not be thereby exonerated. It is well settled that one simple contract, for the same consideration, does not extinguish another. If therefore a promissory note or bill of exchange be given for goods sold or money loaned, it does not bar the creditor’s right of action founded upon the consideration; unless, from the negotiable character of the instrument, and the creditor’s conduct or laches in relation thereto, the debtor is, in contemplation of law, subjected to the hazard of loss. Chitty on Bills p. 433. And if such note or bill be a separate security, it is immaterial, as to the effect of the instrument-merely, whether it be given for a joint or a separate debt. It may be evidence that the debt was in its origin separate, or that the debt originally joint has been converted by a subsequent agreement into a separate debt; but if the fact be otherwise, if the debt was originally joint and has not been so converted into a separate debt, the separate security is merely collateral to the joint responsibility. Where there are several ostensible partners of a firm, it is often a question of difficult solution, whether the debt demanded be the debt of the partnership, or the separate debt of one of its members; and the difficulty arises out of the circumstance that a partnership is usually limited in its objects, and therefore the members of the firm individually have their separate interests and business transáctions. The question in such cases turns, for the most part, upon the enquiry whether the credit *547 was given substantially to the partnership, or to the individual. Each of the partners, from the nature of the social connexion, is the agent of the partnership, with authority to bind the members collectively in all matters within the scope of the partnership business, though not beyond it. Within this limit, each partner may pledge the credit of the firm, and his acts will be obligatory upon all, though the subject of the contract, as goods purchased or money borrowed, be applied by him to his individual purposes. On the other hand, he may pledge his individual credit exclusively; and if he does so, the other members will not be responsible, though the subject be applied by him to partnership purposes. And in the former case, it matters not whether, in point of form, the contract be made or a security given in his own name, or in that of the firm. Williams v. Donaghe's ex'or, 1 Rand. 304. These distinctions have but little application to the case of a dormant partner. The ostensible partner is the sole representative of the firm, and its business is conducted in his individual name. A credit to him in the partnership business is a credit to the firm ; and the true criterion is whether his dealing enures to the concern or to the individual. On the one hand, he cannot pledge the firm for his individual purposes, without disclosing the partnership and professing to deal for its use; and on the other, he cannot avoid pledging the firm in bis dealings for partnership purposes, without the like disclosure, and an express stipulation for his exclusive liability.
This view of the joint liability of a dormant partner, notwithstanding a simple contract security given by the ostensible partner, is well sustained by authority.
Judge Story, in his Law of Partnership, p. 215. § 138. says: “ In the case of a dormant and secret partner, the credit is manifestly given only to the ostensible partner. Still, however, it is not treated as an exclusive credit: for the law in all cases of this sort founds *548 its decision upon the ground that the creditor has had a choice or election of his debtor, which cannot be where the partner is dormant and unknown. The credit therefore is not deemed exclusive, but is binding upon all for whom the partner acts, if done in their business and for their benefit, as is the case in cases of agency for an unknown principal.” And in another passage of the same work, the learned author, treating of the proof of debts in bankruptcy, says : “ In cases of dormant partnerships, it is a general rule that the creditors who have dealt with the ostensible partner, not knowing that there is any dormant partner, have a right to treat their debts as joint debts or as separate debts, and have an election to prove the same against the joint estate, or against the separate estate of the ostensible partner.”
Robinson v. Wilkinson, 3 Price 538. 1 Eng. Excheq. R. 417. was an action of assumpsit for goods sold and delivered, and the question was whether a concealed part-owner of a ship was liable for stores furnished the ship and master. The master drew bills for the demand on the ship’s agents in London. Afterwards Cay, the ostensible owner, obtained indulgence from the plaintiff, by agreeing to accept bills, in lieu of the former, at three, four and six months, which the plaintiff drew on him, but which were dishonoured by Cay, who proved insolvent, and to prevent his bankruptcy agreed to pay a composition of thirteen shillings in the pound, which was secured by the acceptance of his friend Wilson of a bill drawn by Cay at eight months. This bill, which was negotiated by the plaintiffi was also dishonoured, both drawer and acceptor having become bankrupt before the bill was due. At the period of these several transactions, the plaintiff considered Cay as the sole owmer of the ship, and did not know that the defendant was a part-owner. Immediately upon discovering this fact, the plaintiff made a demand upon *549 the defendant, and he refusing, the action was brought, and the plaintiff recovered. The plaintiff’s counsel relied upon the ground that the defendant was a dormant partner, as distinguishing the case from all those which go to determine that the acceptance by a creditor of one of several partners as his debtor works a discharge of the rest. Richards, baron, in his opinion, said: “ The question is, whether this defendant is discharged by any thing that has taken place. Whatever effect any or all of these transactions might have had if Wilkinson had been known to be a partner of Cay, is entirely put out of this case, because the plaintiff certainly dealt entirely with Cay, and knew nothing of Wilkinson, who was nevertheless clearly prima facie liable. It is clear law that a dormant partner cannot discharge himself from liability to pay the debts of a creditor through the medium of his ostensible partner, by any acts of his during the concealment of the unknown partner. If it were otherwise, and this action be not maintainable, a door is widely opened to defraud creditors by means of dormant partnerships.” The views of the other judges were substantially the same; for, without relying upon the unproductiveness of the bills independently, they all regarded the defendant’s unknown interest in the concern as a controlling circumstance in the cause.
In Schermerhorn v. Loines, 7 Johns. R. 311. where a person supplied stores to a ship, of which there were several owners, on the order of one of them who acted as ship’s husband, and took his note in payment, and gave a receipt in full, it was held to be no discharge of the other owners, especially as it did not appear that the plaintiff knew at the time that there were other owners.
In Reynolds v. Cleveland, 4 Cow. 282. it was held that the partners were all liable for articles furnished for the benefit of the partnership, though the vendor did not know of the existence of the partnership, and supposed *550 himself dealing with an individual partner, to whom he # gave credit by charging him alone in his books, and though a special contract was signed by the vendor and that individual; inasmuch as the vendor had not taken him for his debtor knowing that there were other partners.
It will thus be seen that if the separate security in this case can exonerate the dormant partner, it must be by force of the scroll attached to the instrument by way of seal, which gives to it the dignity of a specialty. It is upon this ground that the counsel for the plaintiff in error has very properly placed the cause; and what I have said in regard to the effect of a separate security by simple contract, has been with a view to its due consideration. In that connexion, it is evident that the defence is purely technical, there being no principles of justice or policy which are not equally applicable to the separate security of the ostensible partner, whether it be by specialty or simple contract.
It is argued in the first place, on the part of the plaintiff in error, that he is not chargeable upon a simple contract, because none such has ever existed, the specialty being, in the very nature of the transaction, the whole contract on the subject, and the sole evidence of the debt. But this is to confound the contract itself, to wit, the reciprocal agreement of the parties for the sale of the goods at a given price or value, with the security given by one of them for its performance on his part. The contract has been executed on the part of the seller, and it may be has been extinguished on the part of the purchaser; but its very extinguishment supposes its previous existence, and whether for a month or a moment is immaterial. The authority relied upon by the counsel for the plaintiff in error, 2 Leonard 110. Hooper’s case, and Pudsey’s case there stated, is one of extinguishment. The purport of it, as correctly expressed in 3 Bac. Abr. Extinguishment. D. is, that “ if a *551 stranger give bond for a simple contract debt due by » another, this does not extinguish the simple contract debt; but if, upon making the contract, a stranger gives bond for it, or being present promises to give bond for it, and after does so, the debt by simple contract is extinguished, the obligation being made upon or pursuant to the contract.” And the only question in this cause is, whether the obligation given by the ostensible partner for the price of the goods, has extinguished the implied joint contract of him and the dormant partner, created by law.
In the cases from Leonard, the bond was executed for a sole simple contract debt; and the doctrine is unquestionable, that the simple contract is thereby extinguished, whether the obligation be given by the debtor, or by a stranger who, by agreement of the parties, (though not otherwise) is substituted for the original debtor. The doctrine is founded in good reason ; for the higher security furnishes a better remedy, and must have been intended as a substitute for the former remedy, and the debtor ought not to be harassed by a double action.
In the present case, the ostensible simple contract debt was the sole debt of the ostensible partner; and that was doubtless extinguished by the single bill given by him therefor. But the law, without the knowledge of the creditor, gave him (at his election so soon as discovered) a secret simple contract debt, upon the same consideration, due from the ostensible and dormant partners jointly; and the question is, whether that joint debt was extinguished by the separate obligation of the ostensible partner.
Where the partners of a firm are ostensible, I regard it as perfectly well settled that if a creditor accept the separate bond of one for a simple contract debt of the firm, the joint legal remedy is thereby destroyed : and in that sense thé simple contract may be considered as *552 extinguished. The cases of Clement v. Brush, 3 Johns. Cas. 180. and Tom v. Goodrich &c. 2 Johns. R. 213. cited for the plaintiff in error, prove nothing more than this; for they were both cases of ostensible partnership. This rule is sometimes illustrated by the analogy of a release by an obligee to one of several joint obligors, which operates as a release to all. But there is this distinction between the two cases: in the latter the entire debt is expressly relinquished, and therefore the operation of the release is the same, whether the obligation be joint only, or joint and several; whereas in the former, the debt being joint only, a several action cannot be maintained, and the joint remedy is gone by accepting the higher security from one of the joint debtors. The simple contract debt, however, in justice and good conscience is still due from both, though, being without a legal remedy, it is no longer recognized as existing at law. But it is not extinguished in equity, which allows or gives a remedy notwithstanding, and indeed for the very reason, that there is none at law. And this I take to be the principle of the cases cited in which this court, notwithstanding the execution of a bond by one of the partners for a partnership debt, gave relief in equity against the other partners; Sale v. Dishman’s ex’ors, 3 Leigh 548. Galt’s ex’ors v. Calland’s ex’or, 7 Leigh 594. Weaver v. Tapscott, 9 Leigh 424. All of these, however, it will be found upon examination were cases of ostensible partnership.
In the case of ostensible partners, if the simple contract, instead of being joint only, (as it is at law, though not in equity, Story on Partn. p. 514. § 362.) were several, the separate bond of one of them would not extinguish the several remedy against the other. The simple contract would stand upon the same footing as a joint and several promissory note; and there it is clear that the several action would still remain against him who did not unite in the obligation, upon the same prin *553 ciple which governs the case of a joint and several bond, where a higher security is taken from one of the obligors, by acceptance or recovery of judgment against him only. Higgings case, 6 Co. Rep. 45. It was there resolved, that “where two are bound jointly and severally, and the obligee has judgment against one of them, yet he may sue the other; for against him the nature of the bond is not changed, for notwithstanding the judgment he may still plead that it is not his deed.” Now, in the case of a dormant partnership, the implied simple contract is not only joint, but several also as regards the ostensible partner; and it differs essentially from the case of an ostensible partnership in this, that in the latter the obligation is taken for the joint debt, which it extinguishes at law, but in the former it is taken for the separate debt only, extinguishing that, but leaving the remedy unimpaired upon the joint promise. It is true that the implied contract, after a several judgment upon it against the ostensible partner, can no longer be treated as joint. But this is equally true in regard to a joint and several bond, or a joint and several promissory note; and the reason, equally applicable to all, is to be found not so much in the nature of the debt as in the nature of the remedy, which may be prosecuted to a judgment either jointly or severally, but cannot be so prosecuted both jointly and severally. 1 Wms. Saund. 291 f. Downey v. The Farmers and Mechanics Bank, 13 Serg. & Rawle 288. Williams &c. v. M'Fall &c. 2 Serg. & Rawle 280. 1 Ves. & Beam. 65.
I consider the case of Leslie v. Wilson, 7 Eng. Com. Law Rep. 395. an authority in point. There, goods conveyed by a ship having been spoiled in consequence of the negligence and unskilfulness of the captain, the freighter sued the owners, one of whom was the captain, for damages in an action on the case, and it was held that the action lay, though the captain had entered into a charter party under seal with the freighter, by *554 which he engaged to convey the goods to their destination 5 ^ not appearing on the charter party that the captain was part-ow'ner, nor that the freighter knew hitn to be such when the charter party was executed. All the owners were joined, and the case did not turn upon the vexed question whether the action was founded in tort or in contract, as presented whenever there is an omission of one or more of the joint contractors, it being a good objection in the latter, but notjn the former. It seems how’ever that the defendants’ counsel, treating it, in another aspect, as founded in contract, contended that the implied contract on the part.of the owners for the safe carriage of the goods was merged in the charter party under seal executed by one of them. But the court, after deciding that the execution of a charter party by the captain of a ship does not prevent the liability of the owners, waived as unnecessary the consideration of the doubtful proposition that the action was founded in contract, but upon that hypothesis overruled the objection of the part-ownership of the captain, on the ground that it was secret at the time he executed the charter party. The case therefore cannot be distinguished in principle from the one before us.
The able argument in this case has sought aid, on both sides, from authorities shewing the effect of a separate judgment against an ostensible partner, upon the right of action against his dormant partner; and these are worthy of consideration, inasmuch as they tend in some degree to elucidate, and rather more, it seems to me, to obscure, the principles belonging to the present subject.
In Sheehy v. Mandeville &c. 6 Cranch 253. the plaintiff Sheehy sold merchandise to Jameson, and took his sole promissory note therefor, on which he brought his action of debt and recovered judgment. Afterwards discovering that Mandeville was a dormant partner of Jameson at the time of the transaction, he brought bis *555 action of assumpsit against them both jointly. If the last action had been tried upon the general issue on an indebitatus assumpsit or quantum valebant for goods sold and delivered, and the separate note of the defendant Jameson had been relied upon as a bar, there can be no doubt that the plaintiff would have been entitled to a verdict. But the case was embarrassed by the nature of the pleadings. The declaration contained three counts: the first was founded upon the promissory note; the second was an indebitatus assumpsit for goods sold and delivered ; and the third a quantum valebant for the same goods. The first count could not have been maintained, if it had set forth the case correctly; for it is clear that the note or bill of one partner, drawn by him individually, cannot be declared on as the note or bill of him and his copartner, though given to secure a debt for which the firm is liable, Chitty on Bills p. 433. Siffkin v. Walker &c. 2 Campb. 308. Emly v. Lye, 15 East 7. Ripley v. Kingsbury, 1 Day 150. note; unless under peculiar circumstances, when the individual name has been recognized by the partners as the name of the firm. Collyer on Partn. 227. And if the fact had appeared on the face of the declaration that the note was made by the defendant Jameson alone, that count would have been demurrable. But it did not so appear: on the contrary, it was averred that the note was made by both defendants under the name, firm and style of Robert B. Jameson, by which the defendants became liable, and being so liable, by that name and firm undertook &c. The defendant Mandeville appeared and filed two pleas. The first was to the whole declaration, and pleaded in bar the note of Jameson and the judgment thereupon, averring that the note was given by Jameson, and received by the plaintiff, in discharge of the plaintiff’s bill for goods, wares and merchandise sold to Jameson, which were averred to be the same mentioned in the declaration. This plea was, on de *556 murrer, held bad as to the first count, because it did » not deny the joint assumpsit laid in that count; but was sustained as to the two other counts, on the ground that though a note, without a special contract to that effect, would not of itself discharge the original cause of action, yet that by special agreement it may be received in payment, and such agreement was admitted by the demurrer. The second plea was to the first count only, and pleaded in bar to the joint action the separate judgment, upon the separate note of Jameson, in the former action brought against him alone, which note was averred to be the same mentioned in the declaration. And this plea was held bad on demurrer, on the ground that the original declaration not having been on a joint but a sole contract, the judgment did not bar the subsequent action on the joint contract. The court therefore gave judgment for the plaintiff on the first count of the declaration. Thus chief justice Marshall, who delivered the opinion of the court, made his way, through the perplexity of the pleadings, to the merits of the cause, but by a route necessarily circuitous and technical. The separate judgment on the separate note of the ostensible partner was held not to bar the joint action against him and the dormant partner. ' But that action ought to have been founded on the implied promise alone : and the plaintiff embarrassed his cause, by declaring, in the first count of his declaration, upon the separate note, which he was obliged to treat as a joint note, and by demurring to the defendant’s first plea, instead of taking issue upon it, and thereby putting the defendant to the proof of the special agreement therein alleged.
In Willings & Francis v. Consequa, 1 Peters’ C. C. R. 303. Kuhn was introduced as a witness on the part of the plaintiffs, and objected to by the defendant as incompetent by reason of his interest. It appeared that Kuhn and another, as the agents of Willings & Francis, gave *557 a note to Consequa for merchandise purchased, in which “ Kuhn was interested. Consequa brought a suit against Willings fy Francis on the note, stating it to be given by the procurement of their agents, Kuhn and another. It was agreed that whatever damages might be recovered in the suit of Willings Sf Francis against Consequa, in which the witness was offered, should be set off against the note. The ground of objection was that Kuhn, as a dormant partner of Willings Sf Francis, might be sued as such by Consequa at law, notwithstanding a recovery against Willings Sf Francis on the note, provided the note should not be discharged by a recovery of damages from Consequa, and Willings Sf Francis should be unable to pay it; and if not at law, he might be sued in equity; and therefore that he was interested in increasing the damages. Washington, J. overruled the objection to the competency of the witness, deciding that his interest was too remote, it depending upon several contingencies, and proceeded to remark: “ If these contingencies should all happen, and Consequa should bring an action against Kuhn separately, he may be defeated by a plea of abatement; and the judgment in this action for or against Consequa would be a bar to any suit that he might bring against Willings Sf Francis and the witness. The judgment would as completely extinguish the original debt as if Willings Sf Francis had given a bond for it, which it would clearly have done, the rule that a bond given by a stranger is no ex-tinguishment of the simple contract of the real debtor not applying to a case where it is given by one of two or more joint contractors.” He then went on strongly to intimate, that after such a judgment of Consequa against Willings Sf Francis on the note, he could obtain no relief against Kuhn in equity; because of his wilfully proceeding to judgment against them alone. It will be seen that the judge’s opinion of the effect of a separate judgment against Willings Sf Francis is upon *558 the supposition that Kuhn, having been discovered to be a dormant partner, might be united with them in an action upon the note; and upon that supposition it is clearly correct, as much so as if, after such discovery, Consequa had taken their separate obligation for the debt. But the authorities already cited on that point establish that Kuhncould not be sued upon the note, not being a party thereto; and of course it could not be the case of a separate judgment against part only of several joint contractors, in an action upon the joint contract. The effect of the judgment upon a subsequent joint action on the implied contract was not considered at all; and in truth the whole of what was said by the judge, after deciding that the interest of the witness was too remote to render him incompetent, was mere matter of superfluous argument.
Penny v. Martin, 4 Johns. Ch. R. 566. is an authority upon the question of relief in equity after a several judgment on the joint implied contract. The judgment was rendered in an action of assumpsit against two partners for goods sold, and the bill filed against them and three others as dormant partners since discovered. The bill was dismissed on demurrer, for want of jurisdiction ; the chancellor, without deciding whether the plaintiffs had lost their remedy at law, being of opinion that their ignorance at the time of the judgment, of the fact alleged to have been since discovered, was not a sufficient ground for transferring to that court jurisdiction of a matter properly, if not exclusively, cognizable at law; no accident, mistake or fraud being shewn.
Ward v. Johnson &c. 13 Mass. Rep. 148. is an authority upon the effect of a several judgment on the express joint contract, upon a subsequent action against all the partners on the same contract. An action of assumpsitw&s brought and judgment rendered against one of two partners alone, on a promissory note given by him in the name of the firm. A subsequent action of *559 assumpsit was brought against the two partners on the same note, and they pleaded the former recovery, which was held to be a bar. The court said, that by the judgment in the first action the contract was merged, and the form of action changed, a higher security for the debt being substituted, in like manner as a bond for a debt due upon simple contract operates as an extinguishment ; and that there was no instance of two judgments for the same cause of action.
Robertson v. Smith &c. 18 Johns. R. 459. was an action of assumpsit against the defendants on a promissory note made by Soulden, Smith Sfco. The plaintiff had previously recovered judgment on the note against Peter Slcen Smith and William Soulden, the ostensible partners, under the firm of Soulden, Smith Sfco. In his declaration in the first suit, he averred them to be partners in trade, and that the note was made by them in their partnership name and firm. Not having obtained satisfaction of the judgment, and supposing that Peter Smith and Abraham Van Santmord were also partners under the same firm, he brought suit against the four defendants. And it was held that the former judgment against two of the defendants on the note was a bar to the subsequent action against the four defendants for the same cause of actionv This was the case of a separate judgment against the ostensible partners upon an express contract, the terms of which embraced the dormant partners, and a subsequent action against a\i upon the same joint contract. The reasoning and authorities adduced by Spencer, C. J. who delivered the opinion of the court, are entirely satisfactory to shew that the former recovery was a bar to the subsequent action. But he seems to have misapprehended the case of Sheehy v. Mandeville &c. in expressing his disapproval of the opinion delivered by chief justice Marshall. The separate judgment in that case was not, as he supposes, upon a joint, but a separate contract. Both declara *560 lions, it is true, were upon the same note, but the first treated it as a separate promise (as it was in point of fact) and the last as a joint promise; and the court, being warranted by the structure of the declaration in the last case in regarding it, in that action, as a joint promise, held that the first recovery on the separate promise was no bar to the second action on the joint promise. The result would have been the same, as I have already shewn, if the case had been properly presented by the pleadings; and the decision was doubtless according to the truth and justice of the cause.
In Smith v. Black, 9 Serg. & Rawle 142. Black sold goods to Nathan Smith, and took his note therefor, upon which he recovered judgment. Afterwards discovering Newberry Smith to be a dormant partner, he brought his action against both. The first count was on the promissory note: the second and third counts were for goods sold. It was held that the separate judgment was a bar to the second action : and the decision was, by agreement, made upon the merits of the cause, without regard to the pleadings. Duncan, J. delivered the opinion of the court. He evidently treats the second action as founded upon the promissory note, and that note as evidencing a joint promise. He pays no regard to the effect of the separate security in authorizing and requiring the action thereupon to be several; and gives no thought to the implied joint contract raised by law, that broad basis of the recovery against a dormant partner. And he misapprehends the decision of the supreme court in Sheehy v. Mandeville, stating it from the erroneous marginal note of the reporter to be, “ that a several suit and several judgment against one of two makers of a promissory note is no bar to a joint action against both.” He reasons however very forcibly and satisfactorily to shew, that the merger occasioned by a judgment upon the joint promise cannot be obviated by the plaintiff’s ignorance, at the time, of the dormant part *561 nership, and places in a strong light the inconveniences which would flow from a contrary doctrine.
It seems to me that there is nothing in the cases, thus examined, to justify the idea that the several security of the ostensible partner is to be regarded as the joint contract of the firm, which is at war with the well established doctrine on the subject; and that a want of attention to that doctrine is the source of the misapprehensions I have noticed of chief justice Marshall's opinion in Sheehy v. Mandeville &c. and of the difficulties which arose in that case. Much less is there any thing in those cases to warrant the inference, that the liability of the dormant partner is destroyed by the separate security of the ostensible partner. In truth they proceed upon the opposite idea, of their joint liability, and the merger thereof by a separate judgment upon the joint contract. And if I have succeeded in shewing that the separate simple contract security of the ostensible partner ought to be regarded as collateral to the joint implied contract of the firm, there is still more reason for so considering his separate specialty security; for the former may, under very special circumstances, be treated as the security of the partnership, but the latter in no case whatever.
The foregoing views, if correct, attain the substantial merits of the cause, and preserve in its true spirit and policy the liability of dormant partners ; and are not opposed by even technical obstacles, those stumbling-blocks in the path of justice, chiefly worthy of regard in order that they may be shunned. I think there is no error in the judgment of the circuit court.
Stanard, J.
The acuteness and ability with which this case was argued required the most careful and deliberate investigation of it. Such an investigation I have endeavoured to make, and now proceed to state the results.
*562 The plaintiff in error insists on two géneral propositions : 1st. That as the specialty for the price of the goods was given by Fisher at the time of the parchase, that was the only duty or responsibility incurred, and as that did not charge a partner, whether ostensible or dormant, there was not only no contract on which such partner could be charged, but the contract that was confessedly made was utterly incompatible with a partnership responsibility. 2dly, That if on the purchase an assumpsit had been made, so as to create a simple contract debt for the goods, for which a dormant partner might be made responsible had the responsibility remained unchanged, the specialty given by Fisher the ostensible debtor and accepted by the creditor extinguished the simple contract debt, and discharged at law the other partner, whether known or dormant, from responsibility on the assumpsit. If either of these propositions be sustained, the judgment of the court below must be reversed.
The special verdict finds that the specialty was given for the payment of the price at the time the goods were sold and delivered. The purchase and the obligation by specialty to pay the price were cotemporary,—uno flatu; and it is plausibly, and I incline to think justly said, that the consummated contract for the purchase on the part of the purchaser was by specialty, on the giving of which, and not until then, his title to the goods and his obligation to pay became complete, so that at no time was the ostensible partner responsible in assumpsit, and consequently there was no contract preexisting the specialty on which a partner known or dormant could be sued. But as this view of the case is liable to be encountered by a criticism on the terms of the special verdict, and that criticism may involve in some doubt the interpretation of the verdict in this regard, I forbear to give a definitive opinion on this, and proceed to the consideration of the second question.
*563 The counsel of the defendant in error have, with much learning and ingenuity, endeavoured to maintain, that where several are bound jointly by simple contract, the merger or extinguishment of such contract by a higher security, as by specialty or judgment, does not take place as a necessary legal consequence, unless all bound by the simple contract be bound by the higher security; and that where such higher security is given by a part of those bound by the simple contract, such higher security does not merge or extinguish the simple contract, but operates its discharge by way of satisfaction, if given and accepted as such. The conclusion from these propositions to the case in judgment is, that the specialty of the one did not in law extinguish the assumpsit of both, and could not be considered as accepted in satisfaction of the then unknown responsibility of the dormant partner.
It is our province to enquire into and declare what the law is, not to speculate and reason and decide on what it ought to be. The law, on its own reason, has provided that where two or more are jointly bound by contract, the legal remedy must be pursued against all; and one or more of several jointly bound has the right to intercept judgment in a suit pretermitting others. A kindred principle is, that if, by act of the claimant in such joint contract, one or more of the parties jointly bound be discharged, so that all cannot be subjected to a joint judgment, none are liable to judgment on the joint contract; in other words, all are discharged from the legal remedy on the joint contract. Unity of action and unity of responsibility on the same contract must be coexisting, and the destruction of the one is the destruction of the other. Hence a release of one of several jointly bound operates a discharge of all, and this too though no such discharge was intended. The immediate corollary from this principle is, that unless the creditor who may have taken the specialty of, or prose *564 cuted his claim to judgment against, one of two joint ” debtors by simple contract, retains, notwithstanding, the legal right to sue on the original joint contract all the parties therein, including the one from whom he may have taken the specialty or against whom he may have obtained judgment, the original joint simple contract is, as a necessary legal consequence, discharged at law.
This being premised, I proceed to enquire whether the position taken by the defendant in error be sustained by authority. The passage cited from 3 Bac. Abr. 106, 7. does not support the broad proposition that a merger or extinguishment of a simple contract is not produced by a specialty, unless all jointly bound by the simple contract be also bound by the specialty. The case from 1 Mason 482. proceeds on the ground that a debt by statute was not merged in the specialty of a third person not bound for the debt, and would not have been merged, as would a simple contract debt, in the specialty of the debtor himself. The case of Sheehy v. Mandeville &c. 6 Cranch 253. will be the subject of future notice.
The cases hostile to the position of the counsel for the defendant in error are numerous, and in my estimation decisive.
Among the cases shewing that according to the principles of the common law a judgment obtained by the creditor on the joint contract, against one or more of the parties bound by it, merges or extinguishes the joint contract, as well in respect to the other parties originally bound by it, as in respect to the parties against whom the judgment may have been rendered, I refer to Robertson v. Smith &c. 18 Johns. R. 459. In that case a judgment had been obtained against two partners. Other partners, then unknown, were afterwards discovered, and suit was renewed on the original contract against them. To this the plea of the former *565 judgment against the two was held to be a bar. In passing, it may be remarked that in the very able argument of the plaintiff’s counsel in that case, he felt himself constrained to admit, that had the creditor taken the specialty of the two, instead of prosecuting the claim to judgment against them, such specialty would have extinguished the simple contract as to all.
I also refer to the following cases:
Ward v. Johnson &c. 13 Mass. Rep. 148. Henry Johnson gave a promissory note to the plaintiff, on which judgment was rendered against him. It was afterwards discovered that Thomas Johnson was a dormant-partner, and the suit was renewed on the note against both. The judgment against Henry Johnson was pleaded in bar, and the plea was sustained.
Smith v. Black, 9 Serg. & Rawle 142. almost identical with Ward v. Johnson &c. in circumstances and result.
In the case of Willings & Francis v. Consequa, 1 Peters’ C. C. R. 301. the doctrine in respect to the legal effect of a judgment against an ostensible, on the liability of a dormant partner, is thus laid down: Should the creditor, after the judgment against the ostensible partner, bring suit against K. (the dormant partner) separately, he may be defeated by plea in abatement; and the judgment in this action (against the ostensible partner) would be a bar to any suit he might bring against Willings & Francis and K. The judgment would have as completely extinguished the original debt as to Willings fy Francis, as if they had given a bond for it, which it would clearly have done; the rule that a bond given by a stranger is no extinguishment of a simple contract of the real debtor, not applying to a case where it is given by one of two or more joint contractors.
Drake v. Mitchell &c. 3 East 251. In that case one of several joint covenantors gave a bill of exchange, which, however, was not taken in satisfaction. The *566 bill being dishonoured, suit was brought on it, and judgment therein recovered against the drawer. A suit was afterwards brought on the joint covenant, to which the judgment on the bill was pleaded in bar. This plea was disallowed, on the principle that it being a judgment on the bill, though the bill was merged in the judgment, the covenant was left intact. The bill did not operate an extinguishment of the covenant as to the drawer or the other covenantors, and the judgment on it, without satisfaction, in no wise affected the covenant. It is however conceded in that case, that had the judgment been on the covenant, the legal remedy on the covenant as to the party against whom it was rendered, and consequently as to the other joint covenantors, would have been extinguished.
It may here be remarked, that in each of the cases from Johnson’s and Serg. & Rawle’s reports, the case of Sheehy v. Mandeville &c. was cited and commented on by the court. It was not deemed an authority governing those cases. And in the judgment of the court in the case of Ward v. Johnson &c. it is said, that in Sheehy v. Mandeville &c. “ it is admitted or strongly intimated that the facts disclosed in that case were sufficient, had they been properly pleaded, to bar the action against Jameson.'" A reference to the case itself will shew that there was warrant for the comments made on it by the courts of New York and Massachusetts; and in the complexity caused by the state of the pleadings, the general question now under consideration was not distinctly presented, argued or adjudicated. This is further evinced by the fact that judge Washington, who was one of the court concurring in the decision of Sheehy v. Mandeville &c. gave the judgment cited from 1 Peters’ C. C. R. Willings & Francis v. Consequa.
While in the foregoing cases the effect of a judgment against one of several joint contractors, on the legal responsibility of the others upon the original contract, *567 was the subject of controversy and decision, it was in some of them conceded, as free from reasonable doubt, that the specialty given by and accepted from one would in law extinguish the simple contract as to all: and those cases therefore conclude a fortiori as to the law governing the latter case.
But the adjudications on the latter case are numerous and unvarying. Opinions to this effect are distinctly expressed by this court in its judgments in the cases of Sale v. Dishman's ex'ors, 3 Leigh 548. Galt's ex'ors v. Calland's ex'or, 7 Leigh 594. and Weaver v. Tapscott, 9 Leigh 424; and though it was justly remarked at the bar that in the first and last of these cases a decision of that question was not indispensable, yet in the case of Galt's ex'ors v. Calland's ex'or the court considered that as a material question, and adjudged it as one important to the decision of the case. That adjudication, not in conflict with any that the diligence and learning of the counsel for the defendant in error has discovered, is supported by those before referred to, and more precisely by Clement v. Brush, 3 Johns. Cas. 180. and Tom v. Goodrich &c. 2 Johns. R. 213.
The decision of judge Story in 1 Mason 482. conflicts with that of Tom v. Goodrich &c. on the point whether a bond for duties would merge the debt created by statute, but it does not conflict with the proposition of law on which the judgment in the case of Tom v. Goodrich &c. rests, to wit, that the specialty of one of two joint debtors by simple contract, in point of law extinguishes the simple contract.
It is urged, however, that the case of a dormant partner is distinguishable from that of an ostensible one, and that such a partner cannot be discharged from legal liability for the debts of the partnership, by the transactions of the creditor with the ostensible partner, in ignorance of the fact of partnership. In support of *568 this proposition, the case of Leslie v. Wilson, 7 Eng. C. L. R. 395, reported also in 6 J. B. Moore 415. is cited. That case is inapplicable, because it was an action of tort. One of the parties had signed a charter party under seal; but that, it was adjudged, did not protect the other from the action. The case proceeds on the ground that the action for the tort was independent of that on the contract, and was not merged in the specialty ; and upon the principles of that case, the action for the tort might have been sustained, though all the partners had signed the charter party.
The case of Robinson v. Wilkinson, 3 Price 538. 1 Eng. Exch. R. 417. appears, on a cursory view of the general expressions of chief baron Richards, more applicable and stringent. But on examination it is found that the dealings with the ostensible partner, in virtue of which the dormant partner claimed to be discharged, were of such a nature that the creditor was left at liberty to resort to the original contract, even against the ostensible partner. Those dealings had neither extinguished nor satisfied the original demand as to the ostensible partner, had he only been liable for it; and on that ground only was the action against the dormant partner sustained. Graham, baron, says, “The debt against Cay” (the ostensible partner) “ remained undischarged, and the plaintiff had a right to resort to his original remedy, which was then revived against all persons primarily liable.” Wood, baron, says, “ The drawing of the bill which was afterwards dishonoured is no discharge. If Cay had been discharged, the defendant as his partner would have been discharged, but that was-, not so here.” The remark of Richards, chief baron, that “a dormant partner cannot discharge himself from liability to pay the debts of a creditor through the medium of his ostensible partner, by any acts of his during the concealment of the unknown partner,” is to be limited in its generality to the case in *569 judgment. Beyond the case the judge is not to be un- • • • derstood as intending to extend his remark ; and if he did so intend, it is to that extent extrajudicial and no adjudication.
On the whole case my opinion is, that the giving and acceptance of the specialty of Fisher mentioned in the verdict extinguished the simple contract, and thereafter the creditor had no legal remedy on that simple contract against Fisher and his partner, whether ostensible or dormant, or against either of them ; and that the law arising on the verdict is for the plaintiff in error.