OAKLEY vs. ASPINWALL et al.

Where a suit has been commenced against two persons as joint debtors, the process being served on only one of them, and the plaintiff has proceeded to judgment [514] under the joint debtor act, in a subsequent action or proceeding instituted to charge both the alledged debtors, the cause of action or demand does not *arise upon the judgment.*

A bond given to discharge an attachment against the property of two non-resident debtors, was conditioned to pay " the amount due on account of any debt claimed [515] and sworn to" by the attaching creditor. On the trial of an action on the bond it appeared that the creditor had claimed in his application for the attachment and had sworn to a demand against both the debtors, " *arising upon a judgment*" in his favor. The record was introduced, from which it appeared that the judgment was obtained under the joint debtor act, the process having been served on only one of the parties, and other evidence was given tending to establish the joint liability of the one not served. *Held,* that the attaching creditor's demand against both the debtors did not arise upon the judgment, and therefore that the action on the bond could not be sustained upon the evidence.

The cases as to the effect of judgments under the former and present statutes concerning suits against joint debtors, reviewed and commented upon.

It is a fundamental principle that no person can be condemned or deprived of his personal or pecuniary rights without an opportunity of being heard in his defence.

Whether a judgment obtained under the joint debtor act is evidence of the *extent* of the plaintiff's demand against the party not served, after his liability has been established by other evidence, or whether the effect of the judgment is merely to *limit* the amount of the claim so that no *greater* sum can be recovered, *quere.*

APPEAL from the superior court of the city of New-York, where the action was on a bond executed by the defendants to [516] the plaintiff, dated January 10, 1838, according to § 55 of the statute concerning attachments against non-resident debtors. (2 *R. S.* 12.) The plaintiff had obtained an attachment against John W. Baker and John Young as non-resident debtors, and the bond in question was given in order to procure a discharge of such attachment. It was conditioned that the obligors therein would pay the amount justly due and owing by said Baker and Young, " *on account of any debt claimed and sworn to*" by each attaching creditor, with interest, costs, &c. The declaration alledged that Baker and Young were indebted to the plaintiff in the sum of $26,953,79, on a judgment against them,

and claimed as a breach the non-payment thereof. The defendants pleaded *nul tiel record* and several other pleas. On the trial in the superior court the following facts appeared :

In 1834 the said John Young, who had been a merchant in Trinidad de Cuba, came to the city of New-York, when the plaintiff commenced a suit in the supreme court against him and the said John W. Baker by *capias*, on which Young was returned in custody, and Baker not found. The plaintiff declared in assumpsit against them as partners under the name and style of " John Young," and alledged that as such partners they were indebted to him in the sum of $50,000, for money, goods, &c. Baker was never served with process and never appeared. He resided on the island of Cuba. Young appeared in his own name as impleaded with Baker, and gave a cognovit for the sum of $22,466,15, on which judgment was rendered against both in Oct. 1834, according to the provisions of the act concerning proceedings against joint debtors.

In 1837 the plaintiff procured the attachment above mentioned, stating in the sworn petition on which he obtained it, that he had a demand of $22,492,89, over and above all discounts, " *arising on a certain judgment* against the said John W. Baker and John Young, recovered in the supreme court." On the trial of the present action the record of the judgment obtained as before mentioned was introduced in evidence by the plaintiff. It showed that the judgment was rendered upon the confession of Young, and that Baker had not been served with process. The evidence was objected to by the defendants, [517] but the objection was overruled. The plaintiff also introduced other evidence for the purpose of showing that Baker was a partner of Young at the time the debt accrued for which the judgment was confessed by Young.

After the plaintiff had rested the defendants moved for a nonsuit on the grounds, among others, 1st. That the plaintiff had not proved the material averments in his declaration ; 2. That the statute in relation to joint debtors was not intended to give any effect whatever to a judgment against the individual pro-

perty of a party not served with process. The nonsuit was denied.

The defendants then introduced evidence for the purpose of repelling the allegation of partnership between Baker and Young, and when the evidence on both sides was closed, they requested the judge to rule the following, among other propositions: 1. That the above record of judgment was not competent evidence; 2. That the plaintiff had not proved *such a demand against Baker* as was claimed in the petition on which he procured the attachment. The court refused so to decide, and the defendants excepted. The plaintiffs had a verdict, and their damages occasioned by the breach of the condition of the bond were assessed at $26,363,24. The superior court at general term gave judgment according to the verdict, and the defendants appealed to this court.

*F. B. Cutting*, for appellants.

*H. P. Hastings*, for respondent.

BRONSON, Ch. J.   The plaintiff applied for and obtained the attachment on a petition and affidavit sworn to by him, stating that Baker & Young were indebted to him in a specified sum of money " arising upon a certain judgment" against them in his favor.   Baker got the attachment discharged on giving a bond, with a condition to pay the amount justly due by Baker & Young to the plaintiff " on account of any debt so claimed and [518] sworn to by him."   This is an action on the bond ; and one question is, whether the plaintiff has proved that he had a debt against Baker & Young " arising upon a judgment."   On the trial the plaintiff produced a judgment in his favor against Baker & Young ; but it was rendered in a suit in which Baker neither appeared, nor was served with process.   Such a judgment does not prove a debt against Baker ; nor is it prima facie evidence of indebtedness, which must be rebutted.   As against him, the judgment is of no other force or effect than such as has

been expressly given to it by the legislature. It is a first principle in the administration of justice, that no one shall be condemned, nor be made to suffer, either in his person, fame, or estate, before he has had an opportunity to be heard in his defence. Although this principle is not always properly regarded in framing laws, our present joint debtor act gives no effect to the judgment, as against the defendant not brought into court, beyond allowing the execution to be collected of the personal property which he owns as a partner with the other defendants. (2 *R. S.* 377, §§ 1 *to* 4.) If there had been nothing beyond this omission to give any farther force to the judgment, an action could not be maintained upon it, nor could it be made the foundation for an attachment against the defendant who was not served with process, and who did not appear. Nothing short of express words, or necessary implication in a statute could give such an effect to the judgment. But this is not all. There is more than an omission to give a greater force to the judgment. The legislature has plainly enough declared that it shall have no effect beyond reaching partnership property. After allowing a judgment in form against all the defendants, (§ 1,) the second section provides, that as against the defendant who had no opportunity to answer, the judgment " shall be evidence only of the extent of the plaintiff's demand, after the liability of such defendant shall have been established by other evidence." The judgment is not prima facie evidence of his liability, which must be rebutted. It proves nothing. The liability must be " established by other evidence." The language is not only plain enough; but it expresses the intention of the revisers, as appears by their note upon the section: and it is [519] moreover in accordance with the great principle that no man shall lose his right by a judicial proceeding until after he has had an opportunity to be heard.

If the judgment is no evidence of Baker's liability, it is of course no proof of a debt against him. It is plainly absurd to assert the contrary. The plaintiff himself did not pretend on the trial that the judgment proved a debt against Baker; but after reading the record, he proceeded to give evidence for the

purpose of showing that Baker & Young had been partners in business, and were indebted to him for the proceeds of certain cargoes of goods which he had consigned to Young for sale. This evidence was an entire departure from the ground on which the attachment was procured; and it wholly failed to show that the plaintiff had a debt against Baker & Young " arising upon a judgment." This is not a mere question of form. The plaintiff has not proved any breach of the condition of the bond on which the action is brought.

If the plaintiff had a debt against Baker & Young as general partners in the commission business—about which there is much room for doubt—his attachment proceedings against them should be founded upon that debt, or upon the debt in connection with the judgment. He should have stated in the usual way, that he had a demand arising upon contract, (2 *R. S.* 3, § 3 ;) to which it might have been added, if it was deemed a matter of any. importance, that he had obtained a judgment for the amount in a suit where Baker did not appear, and was not served with process. And when a creditor wishes to sue in a case of this kind, he should proceed in the same way—declaring upon the original cause of action ; and either adding or omitting the recovery of the judgment, as he pleases. The judgment adds no force to the claim. It is absurd to say that a party may have an action on a judgment which is no evidence of the defendant's liability. He might as well sue on a piece of blank paper.

When an action was brought on a judgment recovered under the former joint debtor act, if the defendant pleaded nothing but *nul tiel record*, the judgment was held to be prima facie evi- [520] dence of his liability. But in *Mervin* v. *Kumbel*, (23 *Wend.* 293,) all the judges were agreed that the present statute had altered the old law; and if an action were brought upon a judgment recovered since 1830, the plea of *nul tiel record* would put the plaintiff to the proof of the original demand against the party who was not brought into court in the first suit. Two of the judges thought in that case that the plaintiff might still sue on the judgment, instead of suing upon the original demand, or

Oakley *v.* Aspinwall.

upon that in connection with the judgment; but it was not necessary to decide the question, as all the judges were agreed in reversing the judgment upon another ground. A judgment which is not prima facie evidence against the defendant can not, in the nature of things, be a sufficient foundation for an action; and as the contrary has never been necessarily decided, I feel quite at liberty to settle the question upon principle.

It is said that the original demand was merged in, and extinguished by the judgment, and consequently that the plaintiff must sue upon the judgment, if he sues at all. That would undoubtedly be so, if both the defendants had been before the court in the original action. But the joint debtor act creates an anomaly in the law; and for the purpose of giving effect to the statute, and at the same time preserving the rights of all parties, the plaintiff must be allowed to sue on the original demand. There is no difficulty in pursuing such a course; it can work no injury to any one; and it will avoid the absurdity of allowing a party to sue on a pretended cause of action, which is in truth no cause of action at all; and then to recover on proof of a different demand.

Although the point is not made by the bill of exceptions, the court below held that, after establishing the joint indebtedness of the defendants, the statute fixes the amount of the liability at the amount of the judgment. I can not subscribe to that doctrine. In my opinion the plaintiff can only recover to the extent of the liability which he establishes by evidence other than the judgment. He may recover less, but can not recover more than the amount of the judgment. I shall never yield my assent to the doctrine, that the plaintiff may prove a joint liability on the part of the defendants to the amount of [521] one dollar, or an indefinite sum, and then have a verdict for a thousand dollars—or ten thousand, as the case may be—on producing a judgment for that amount. On a just and reasonable interpretation of the statute, the liability of the defendant, in the whole extent to which the recovery can go, must be established by extrinsic evidence. The plaintiff can have no aid

from the judgment, as against the party who was not brought into court.

The course of decision on this subject shows how strongly the courts are opposed to giving any effect to a judgment against a party who had no opportunity to answer. The former joint debtor act provided for a judgment and execution against all the defendants "in the same manner as if they had all been taken and brought into court," without any qualification whatever of the force or effect of the judgment in a subsequent action upon it. (1 *R. L.* 521, § 14.) And yet the courts held that the judgment was at the most only prima facie evidence against the defendant who was not served with process; and that only where he pleaded nothing but *nul tiel record*, that he might so plead as to put the original cause of action in issue, or show it barred by the statute of liminations, and thus destroy the whole force and effect of the judgment as evidence against him in the new action. (*Carman* v. *Townsend*, 6 *Wend.* 206; *Bruen* v. *Bokee*, 4 *Denio*, 56.) With such a course of decision under the former statute, it would be strange indeed if we should hold that a judgment recovered under the present joint debtor act was evidence of a debt against the defendant not brought into court, when the statute declares, in effect, that the judgment shall be no evidence of his liability. It would be repealing the statute, and violating a great principle at the same time.

When the courts of any state render a judgment against one who was not a citizen of that state, and was not brought into court, the judgment is held absolutely void every where else, although it may have been expressly authorized by the legislature of the state where it was rendered. (*Starbuck* v. *Murray*, 5 *Wend.* 148; *Holbrook* v. *Murray*, id. 161; *Harrod* v. *Baretto*, 2 [522] *Hall*, 302; *Wilson* v. *Niles*, id. 358; *Steele* v. *Smith*, 7 *Watts & Serg.* 447; *Harmon* v. *Taylor*, 20 *Vermont*, 65; *Ewer* v. *Coffin*, 1 *Cushing*, 23; *Hall* v. *Williams*, 6 *Pick.* 232.) I doubt whether such a judgment is of any force in the state where it was rendered. Under our form of government it is

Oakley *v.* Aspinwall.

questionable, to say the least, whether the legislature can in any case, without an express license from the people, authorize a judgment which shall operate *in personam* against a defendant who neither appeared nor was in any way served with process. That state must not boast of its civilization, nor of its progress in the principles of civil liberty, where the legislature has power to provide that a man may be condemned unheard. But it is not necessary to examine the powers of the legislature on the present occasion, for the joint debtor act, when fairly construed, can not aid the plaintiff. In *Mervin* v. *Kumbel,* (23 *Wend.* 293,) all the judges were agreed that the judgment did not prove a debt against the defendant who was not brought into court. The principle of that case decides this. The plaintiff had no debt or demand against Baker " arising upon a judgment."

It is said that although the present statute differs in terms from the former one, it is in effect but a re-enactment of the old law, with the interpretation which it had previously received from the courts. But that is a mistake. Under the old law, the judgment was held prima facie evidence of a debt against the defendant who had not been brought into court, if he pleaded nothing but *nul tiel record ;* whereas under the present law it is already settled that the judgment is not prima facie evidence in such a case; but the plaintiff must establish the defendant's liability by extrinsic evidence. (*Mervin* v. *Kumbel, supra.*) And although the chancellor had expressed the opinion in *Carman* v. *Townsend,* (6 *Wend.* 296,) that the defendant might so plead in an action on the judgment, as to put the original cause of action in issue, the point was not necessarily decided; nor was it settled until long after the present statute was passed. (*Bruen* v. *Bokee,* 4 *Denio,* 56.) The intention of the legislature to alter the law is apparent. The first statute provided for a judgment against the defendant not brought into court, [523] without any qualification whatever of the effect of the judgment as matter of evidence ; but the present statute says, in substance, that the judgment shall prove nothing against such a defendant : his liability must be established " by other evidence." And, as we have already seen, the present statute did in fact work a change

in the law. It is settled that what was prima facie evidence for the plaintiff under the former statute, is no evidence at all in his favor under the present law.

There was another important departure from the old law. Formerly an execution might go against any lands or goods which were not the sole property of the defendant not brought into court. But under the present statute, (§ 4,) the execution does not reach the interest of such a defendant in any lands ; nor does it touch his interest in any personal property, except such as is owned by him as a partner with a defendant who was brought into court.

And here it is proper to remark that the present statute was carefully drawn, for the purpose of giving the relief which the creditor sometimes needed in proceedings against joint debtors, without doing any great violence to principle. As against the defendant who was not brought into court, it gives no effect to the judgment beyond reaching the goods and chattels which he owned as a partner with the defendant who was served with process. As each partner might dispose of the partnership effects without the consent of his associate, there was no great wrong in allowing the same thing to be effected by a suit in which one of the partners had an opportunity to be heard. This construction, while it does no violence to the language of the statute, comes nearer than any other to rendering exact justice to all parties. But if we allow the plaintiff to maintain a suit on the judgment against the defendant who was not brought into court, or to make it the foundation of an attachment against him, we shall give an effect to the judgment beyond that declared by the statute, and which is repugnant to the plainest principles of justice.

We are of opinion that the plaintiff proved no debt or demand [524] against Baker arising upon a judgment, and consequently that he was not entitled to recover.

MULLETT, J. The most important legal question presented by this case, is, whether the record produced on the trial, proved a judgment against John W. Baker and John Young. The

Oakley v. Aspinwall.

plaintiff's application for the attachment stated, that he had a demand for the amount claimed, "arising upon a certain judgment rendered in the supreme court, &c. against the said John W. Baker and John Young, in his favor." And his affidavit, verifying his application, stated that the said John W. Baker and John Young were "justly indebted to him (in the sum specified,) arising upon a certain judgment rendered in the supreme court, &c. against the said John W. Baker and John Young, in his favor." The statute under which these proceedings were had, requires that in the application for the attachment the nature of the indebtedness shall be shown. (2 *R. S.* 3, § 3; 6 *Wend.* 555; 7 *id.* 490.) The bond given by the defendant on which this action is brought, after referring to the attachment, and some of the proceedings under it, bound them to pay to each attaching creditor, the amount justly due and owing by the said John W. Baker and John Young, to him at the time he became such attaching creditor, *on account of any debt so claimed and sworn to by him, &c.;* and by the 57th section of the statute, it is provided that in actions upon such bonds, the prosecuting creditor shall establish his demand in the same manner as in an action against the debtor. From these premises it follows that if the plaintiff did not, on the trial of the action, establish such a debt as he claimed and swore to, he established no claim against the defendants in this action. The question then is reduced to this, did the record produced by the plaintiff prove a judgment against Baker?

The record shows that Baker was not arrested and did not appear as a party to the suit in which the judgment was rendered. The judgment was confessed by Young, who appeared in his own name as impleaded with Baker, and said that he could not deny the action of the plaintiff, nor but that he, together with Baker, did undertake and promise in manner and [525] form as the plaintiff had declared against him and Baker, nor but that the plaintiff had sustained damage by reason of the non-performance of the said promise and undertaking to $22,466,15, agreeably to the account as presented, besides costs and charges, &c.

It is one of the fundamental principles of our jurisprudence, that no person shall be condemned or deprived of his personal or pecuniary rights, without an opportunity of being heard in his defence. (*De Witt* v. *Burnett*, 3 *Barb. S. C. Rep.* 89.) This principle is considered so sacred by our courts that they presume its constant influence over the legislature. There are numerous instances in which the legislature has required the performance of official duties, in their nature judicial, without providing for notice to the persons to be affected thereby, in which the courts have decided that the legislature did not intend to disregard this great rule of personal security, but left it to be applied by the courts according to the principles of the common law. This principle has frequently been applied, by our court, in actions on judgments rendered in other states.

By the common law, no judgment could be given for or against a party who was not in court, that is, who had not actually or constructively appeared in the suit. So inflexible was this rule considered in a country where great deference is paid to commercial credit, and great rigor used in the enforcement of pecuniary obligations, that a plaintiff, in an action against joint debtors, could not recover a judgment against any of them, even to reach their joint property, until they were all, if living, brought into court, or those who could not be brought into court, were outlawed. To avoid the inconvenience, delay and expense of proceeding to outlawry, an easier, more expeditious and cheaper mode of proceeding was provided by our statute, for the amendment of the law and the better advancement of justice, passed, March 20, 1801. (1 *K. & R.* 353.) By the 13th section of that statute it was provided, that all persons jointly indebted on contract, for which remedy might be had at law against such debtors, in case *all* were taken by process, should be answerable [526] to their creditors separately, that is to say, the creditors might issue process against them in the manner then in use, and in case any of the joint debtors should be taken and brought into court, he or they so taken and brought into court, should answer to the plaintiff, and in case judgment should pass for the plaintiff, he should have his judgment and execution against

such of those as were brought into court and against the other joint debtors named in the process, in the *same manner* as if they had all been taken and brought into court by virtue of such process. But it should not be lawful to issue or execute any such execution, against the body or against the lands or goods, the sole property of any person not brought into court. The objects of this statute were to provide a remedy for the expense and delay of the old proceeding, and to render joint property more accessible for the payment of joint debts. It made such individual partner a representative of his firm so far as the joint indebtedness and joint property were concerned, but it was not intended to affect the individual rights of persons who had no opportunity to answer for themselves.

The judicial constructions of this statute have not been numerous, but they show that the judges have experienced some difficulty in tracing the line between the remedy provided by it and the rights of persons not before them. In the case of *Dando* v. *Doll & Tremper*, in November, 1806, (2 *John.* 87,) the supreme court decided that in an action of debt on a judgment against two defendants, one of whom only was brought into court, the plea of *nul tiel record*, by the one who was not brought into court, was not a good plea, remarking that the judgment was clearly regular *in form* against both the defendants. That there was, in that case, no plea or suggestion of any defence by Doll, who had merely pleaded *nul tiel record*. The court said, " On this judgment and on this plea we have no alternative, but must say that the plaintiff is entitled to judgment. We give no opinion what it would be proper to decide on any other plea or statement of facts submitted to the court."

The case of *The Bank of Columbia* v. *Newcomb, impleaded with Stiles*, decided in May, 1810, (6 *John.* 98,) was an action of debt on a judgment. Newcomb was taken on the *capias ad respondendum*, and Stiles, the other defendant, returned [527] not found. Newcomb pleaded 1. *Nul tiel record;* 2. That Stiles was taken on the capias in the original suit, and he, Newcomb, was returned not found ; 3. That he was not taken before the giving of the judgment in the original suit, but was returned

not found. There was a general demurrer to the second and third pleas. The court decided both pleas to be bad. They referred to the statute, and came to the conclusion that the judgment was regular *in form* against both defendants; and would be held so on the issue of *nul tiel record.* Being a regular judgment, *in form,* against both defendants, an action of debt would lie on it against both; and consequently the pleas were bad. The court then suggested that a defence might be made to the judgment, by the defendant who was not taken in the first suit; but declined intimating what defence or how it should be made.

The statute of 1801 was copied into the revision of 1813, and the same course of decision was continued. In the case of *Taylor and Swift* v. *Pettibone,* (16 *John.* 66,) which was a certiorari to a justice's court, decided in January, 1819, the court, after referring to the previous decisions, says: "We then consider the judgment against the party not brought into court, as *prima facie* evidence of a debt, reserving to him the right to enter again into the merits and show that he ought not to have been charged."

In the case of *Townsend and Townsend* v. *Carman, impleaded with Ring,* (6 *Cowen,* 695,) in the supreme court, in February, 1827, it was decided that an action of debt would lie on a judgment against two joint debtors, though one was not arrested, and did not appear in the original action. Though in such a case, a plea by the one who was not taken in the original suit, stating that the indebtedness upon which the judgment was recovered, was the sole debt of the other defendant, and not a joint debt, was a good plea, and set up a good defence. The judge who gave the opinion of the court remarked, that "there was nothing in the act restraining the plaintiff from bringing an action of [528] debt upon such judgment against both defendants, nor from using the judgment as evidence of the indebtedness of all. The judgment is *prima facie evidence* of debt against the party not brought into court. How far, or in what respect, he may be permitted again to enter into the merits of the original action,

and show that he ought not to have been charged, was not thought necessary in the previous case, nor is it in this, to decide."

The above references show the condition of the law as it stood at the time of the revision of the statutes in 1829. It is impossible to contemplate these decisions without perceiving that they gave a construction to the statute, and a force to a judgment recovered under it, which seriously affected the rights of persons not in court, and encroached upon that fundamental principle of jurisprudence which secures to every individual safety against all judicial proceedings to which he is not a party, and against which he has not had an opportunity to defend himself. It merged the original indebtedness in the judgment, and changed a liability on an unliquidated simple contract, into a debt of record, possessing many important qualities, not belonging to the original indebtedness. It made the judgment record *prima facie* evidence of the indebtedness of the party not brought into court, and thereby changed the nature of the proof necessary to establish the indebtedness. It compelled the debtor on a simple contract, to resort to a special plea to set up a defence which he might have made to an action on the original indebtedness, under the general issue. And finally, it gave to a dishonest man a power to collude with his creditor, *prima facie*, at least, to establish a dishonest debt against a pretended partner, from which he could exonerate himself only by a defence set up by a special plea. The repeated intimations of the court, that there might be some mode of pleading adopted by which the party not brought into court in the original suit, might avoid any unjust consequences of the decisions which they felt bound to make, clearly indicate their sense of the danger of the construction established by them, and the sanctity of the first principle upon which their jurisdiction over individuals was founded, while the uncertainty of the remedy suggested, called for legislative [529] interposition. This was provided by the revised statutes adopted in 1830.

By the first section of the revised statutes on the subject of proceedings against joint debtors, (*vol.* 2, *p.* 377,) all the benefits of the old law are preserved. By the second section it is de-

clared that such judgment shall be conclusive evidence of the liability of the defendants who were *personally* served with process in the suit and who appeared therein, but against any other defendant it shall be evidence only of the *extent* of the plaintiff's demand, after the liability of such defendant shall have been established by other evidence. This second section was clearly aimed at the judicial construction which had attempted to make the judgment in the original suit *prima facie* evidence of indebtedness against a person who was not served with process, and who did not appear in the suit in which it was rendered. To prevent all mistakes as to the meaning of this section, the revisers, in a note to the legislature accompanying it, say, " The law on this subject seems rather unsettled. The better opinion probably is, that the defendant not brought in may contest the judgment, but this throws upon him a very onerous burden of proving a negative. The above section seems calculated to prevent fraudulent combinations and to give to the plaintiff all he ought to require." (*Rev. Notes.*) This section was adopted by the legislature the same as reported and explained, and was evidently intended to abrogate the doctrine that the judgment was *prima facie* evidence against a person who was not an actual party to it of his indebtedness, or of any other fact save the one excepted; and it *did* have that effect, if a rule of construction which permitted a judgment to be *prima facie* evidence of a fact, can be abrogated by a statute which declares that it shall *not* be evidence of that fact.

There is no room for construction on this subject. The statute is plain, that the original judgment shall not be *any* evidence against the defendants who were not served with process and did not appear in the suit in which it was rendered, of *any thing* except the *extent* of the plaintiff's demand, after the liability of such defendants shall have been established by other evidence. [530] Such judgment therefore is not evidence of its own verity or existence for the purpose of establishing the liability of those who were not brought into court, or of changing the nature or character of that liability.

But the learned judge before whom this cause was tried; the

Oakley *v.* Aspinwall.

superior court which adopted his opinion on this point, and the counsel for the respondent in their argument here, all treat the law in reference to the effect of the original judgment as evidence against the party who was not served with process and did not appear in the suit in which it was rendered, as though it had not been changed by the revised statutes. The judge in his opinion says, " the revised statutes, in providing that in a suit upon the judgment, it shall only be evidence of the extent of the liability of those not served with process, after their liability had been established by other proof, merely enacted what had been settled law under the provisions of the revised laws of 1813 ;" and the counsel for the respondent assumes and asserts that " the former statute was in effect held to be precisely the same, as the expressly declared effect of the revised statutes ;" and both refer to the case of *Townsend* v. *Carman*, a case arising under the old statute, and in which, as I understand the language of the court, it was expressly admitted, as it had been frequently decided before, that such judgment was *prima facie* evidence of a debt against the party who was not served with process in the suit in which it was rendered, unless met by a special plea denying the defendant's liability for the demand on which it was recovered, and that it was so conclusively a judgment against such party, that he could not controvert it under the plea of *nul tiel record.* Influenced by great respect for the opinions of the truly learned judge who tried this cause ; by the full and deferential manner in which his decision, on the point in question, was adopted by the judge who delivered the opinion of the court at the general term ; and by the apparent sincerity and self conviction of the counsel who argued this case before us for the respondents, I have, more than once, carefully examined all the reported decisions since the revised statutes, within my reach, in the endeavor to find some decision or dictum which would justify *me* in adopting the conclusions to [531] which they had arrived, but have not succeeded.

The case of *Townsend* v. *Carman* so frequently referred to, although decided in the court for the correction of errors, in December, 1830, was an appeal from a decision of the supreme

court in 1827. The case of *Bruen* v. *Bokee,* in which the effect of a judgment under the joint debtor act was discussed, was also a case under the old law, and Ch. J. Bronson expressly alludes to that fact at the commencement of his opinion. These cases, although truly expounding the old law, are therefore no authority on the construction of the revised statutes. But the case of *Marvin & Goldsmith* v. *Kumbel,* (23 *Wend.* 293,) was under the revised statutes, and brought the question of the effect of a judgment under the statute against the person who was not served with process and did not appear in the suit in which it was rendered, directly before the supreme court, by a writ of error to the New-York common pleas. In this case Kumbel sued Marvin & Goldsmith in the common pleas, and declared against them in debt on a judgment previously recovered against them in the same court, in an action of assumpsit, but did not state in his declaration how the defendants appeared in that suit. Marvin pleaded 1st, *nul tiel record ;* 2d, in substance, that he was not served with process or notice, and did not appear in the suit in which the judgment declared on was rendered. To the second plea the plaintiff replied, that the suit in which the judgment was recovered was commenced by the service, on *Goldsmith,* of a *capias ad respondendum* issued against both of the defendants. There was a demurrer to this replication and joinder, upon which the common pleas rendered judgment for the plaintiff, thus deciding that an action of debt on the judgment would lie against Marvin although he was not served with process and did not appear in the suit in which it was rendered, which was adopting the decisions under the old statutes. (*Bank of Columbia* v. *Newcomb,* 6 *John.* 28.)

On the trial of the issue upon *nul tiel record,* the plaintiff offered the judgment record, upon which he had declared, in evidence, by which it appeared, that Goldsmith was in custody, [532] and that Marvin was returned by the sheriff on the capias in that suit, not found, and that judgment was rendered by default. On these grounds Marvin objected to the record as not evidence against him, which objection was overruled and Marvin excepted. There being no further evidence offered by

Oakley v. Aspinwall.

the plaintiff, Marvin moved for a nonsuit which was denied, and Marvin again excepted. A verdict and judgment were rendered for the plaintiff, upon which the defendant brought the judgment, including the bill of exceptions, to the supreme court by writ of error. The case in the supreme court was argued before Nelson, Ch. J. and Bronson and Cowen, Justices, in 1840 ; and in the decision of the case Bronson and Cowen, Justices, gave opinions, and the Chief Justice concurred with Justice Cowen. On the subject of the effect of the judgment declared on, as evidence against Marvin, there was no disagreement among the learned judges. As I understand them, all agreed that the judgment record was *no* evidence against Marvin on the issue upon *nul tiel record.* Bronson, J. after alluding to the former statutes and the decisions under them, says : " Under the former statute there was some ground for holding the judgment to be *prima facie* evidence of a debt against the defendant, who was not brought into court in the first suit, for the statute authorized a judgment against all the defendants, *without limiting its effect,* except as to the execution, to be issued upon it; but the present statute has gone a step further, and provided that as against a defendant not served with process, the judgment shall be evidence *only* of the *extent* of the plaintiff's demand after the liability of such defendant shall have been established by other evidence. The plaintiff may have an execution against the partnership property of all the defendants. But in an action against the defendant not taken, the judgment proves nothing. His liability must be established by other evidence." On this point Mr. Justice Cowen agrees with Justice Bronson, and concurs with him in reversing the judgment of the common pleas, on the ground that the judgment record admitted in evidence on the trial of the issue, upon the plea of *nul tiel record* alone, proved nothing against Marvin, and that the plaintiff therefore ought to have been nonsuited. [533] The unanimous decision of the court upon this point, was put entirely on the change which had been made in the law by the revised statutes. The case of *Marvin and Goldsmith* v. *Kumbel* is therefore a direct authority for deciding that the old law is

changed by the revised statutes, and that under the revised statutes the record of a judgment recovered according to the provisions of the statute relating to proceedings against joint debtors, is no evidence in an action against a party who was not served with process and who did not appear in the suit, of any thing tending to render him responsible under such judgment, or in any way to affect him by it. If it would not be evidence in an action directly against the party himself, it is not evidence in an action like this; for the statute declares that in such an action, the prosecuting creditor shall establish his demand in the same manner as in an action against the debtor. (2 *R. S.* 12, § 57.)

But the plaintiff disclaims the use of the judgment in establishing the demand against Baker, and insists that he established Baker's liability by other evidence. To sustain his action he was bound to prove a *judgment* against Young & Baker; if he did not prove such judgment by the record, how did he prove it? It availed him nothing towards establishing that fact, that he gave evidence tending to show an account against Young & Baker. The judge before whom the cause was tried at once rejected that absurdity. In his opinion he says that " the defendants were undoubtedly correct in holding that the plaintiff could not recover on this bond, on the mere proof of an open demand upon a contract against Baker & Young, or against Baker only;" and therefore to sustain this action, he seeks to give some effect to the judgment as against Baker. It is true that under the former statute, when the judgment was considered *prima facie* evidence of a debt against all the defendants named in it, whether they appeared in the suit or not, the party who had not appeared might, in an action of debt on the judgment against him, rebut this presumptive evidence by a plea denying his liability for the demand upon which the judgment was recovered, and thus throw the burden [534] of proving his liability on the plaintiff. If the defendant succeeded in this plea, of course the judgment did not bind him. But if the plaintiff prevailed he recovered in an *action of debt on the judgment*, the validity of which had been proved by

Oakley *v.* Aspinwall.

the record, as was the case in *Townsend* v. *Carman.* How can this proceeding be adopted in a case where there is no judgment to commence with, or what is the same thing where there is no proof of one?

In this case there was no proof of any judgment against Baker, and therefore no proof of a judgment against Young & Baker. The plaintiff on suing out his attachment, claimed and swore to a demand arising on a judgment against Young & Baker, and the defendants, by the bond, only bound themselves to the plaintiff to pay the amount due to him on account of the demand claimed and sworn to by him; it follows therefore, that the plaintiff did not make out a case to entitle him to recover on his assignment of breaches of the conditions of the bond; and the judgment appealed from must be reversed for that reason.

It is admitted that this course of reasoning tends to the conclusion, that an action of debt can not be maintained on a judgment recovered under the statute relating to proceedings against joint debtors, against a party who was not served with process, and did not appear in the action in which such judgment was rendered. This was the clearly expressed opinion of Mr. Justice Bronson, in the case of *Marvin & Goldsmith* v. *Kumbel,* and I think it was too firmly based upon general principles and the necessary construction of the revised statutes to be shaken by any arguments founded on any supposed difficulty or inconvenience in the consequential change in the form of actions. It is true that Mr. Justice Bronson was overruled by Judge Cowen, with the concurrence of the chief justice, but I am not able to reconcile the opinion of Judge Cowen on *this* point with his decision on the *other* point in the case. On the *other* point he expressly decided, that an action of debt on a judgment recovered pursuant to the statute, which was answered by the party not brought into court, *only* by the plea of *nul tiel record* without any denial or pretence that he was not jointly liable with the other defendant, for the original demand [535] on which the judgment was recovered, could not be sustained by the uncontradicted record of the judgment; that such record

was not proof enough to save the plaintiff from being nonsuited; and he put his decision for reversing the judgment of the common pleas solely on the ground that the court erred in refusing to nonsuit him, and on this point the judges all agreed. There was no reason for applying the old rule which permitted the defendant to avoid the effect of the judgment by denying his liability for the demand on which it was recovered, for no such denial was made. The plea was merely *nul tiel record,* and the issue a simple issue on that plea. I confess myself unable to understand how much this unanimous opinion of the court lacks of deciding that an action of debt on such a judgment can not be maintained against a person who did not appear in the suit in which it was rendered. If an action of debt on judgment can not be sustained by the undisputed record of the judgment, what will sustain it? After the case of *Marvin & Goldsmith* v. *Kumbel,* which is the only one on this subject since the revised statutes, it devolves on those who hold that an action of debt on such a judgment will lie against the party who did not appear in the suit in which it was rendered, to show how it can be sustained and what proof will sustain it. Until these questions are satisfactorily answered I shall agree with Ch. J. Bronson on this point *also.*

For myself, I confess I have no inclination to stop the above course of reasoning at any point short of the conclusion, that such a judgment is in *effect no* judgment against the person who was not served with process and did not appear in the suit in which it was rendered. I admit that it is rendered against all the defendants named in the process in the same *manner, or form,* as if all had been served with the process, but I deny that it has any effect as a judgment against a person who did not appear, either actually or constructively, or that it is in any fair sense a judgment against *him.* The statute says in substance, that it shall have no effect against him as evidence ; nor shall any execution be issued upon it against his person or individual [536] property ; and the supreme court have recently decided that such a judgment did not even change a simple contract debt so as to take it out of the statute of limitations applicable

Oakley *v.* Aspinwall.

to such demands. (4 *Denio*, 56.) With this construction of the statute I am satisfied. I can understand and appreciate the wisdom of the legislature, in providing means to enable a creditor to obtain satisfaction of his debt against joint debtors, by reaching their joint property through a proceeding against a part of the owners, without being obliged to await the slow and expensive process of outlawing the other. But I never will understand the legislature as intending to violate one of the most venerable and sacred rules of the common law, founded on the principles of natural justice, which declares that no one shall be condemned without an opportunity of being heard in his defence, until they *expressly say so.* When they *do* say so, it will be time enough for the judiciary to decide how much respect shall be paid to an *edict* so revolting and tyrannical. On the whole case I fully confer with the chief justice in reversing the judgment appealed from.

JEWETT, J. On the trial of this case, *nul tiel record* having been pleaded by Baker among other pleas, the plaintiff gave in evidence a record of judgment recovered by him against Baker & Young in the supreme court of this state, in the term of October, 1834, for $22,492,89, by which it appears that service of the process in the suit in which it was rendered was made on Young, but not on Baker, and that he did not appear in the suit. That the declaration was in assumpsit, containing the general counts, and that the judgment was rendered upon a *cognovit actionem* signed by Young in person. The plaintiff also gave evidence for the purpose of showing that Baker was a joint contractor as a partner with Young for the plaintiff's original demand, for which the judgment was so recovered. One question made by the bill of exceptions is, whether the evidence thus given established the fact that the plaintiff's demand, as against Baker, *arose upon* " *a certain judgment rendered in the supreme court of judicature of the people of the state of New-* [537] *York against the said Baker & Young in his favor,*" as is stated in his application for the attachment and recited in the bond executed by the defendants. If it did not, the judgment ap-

pealed from is erroneous on that ground. It is insisted that the evidence did not establish any demand against Baker, *arising upon the judgment* rendered against him and Young in favor of Oakley, whatever the effect of the evidence may be deemed to be, in respect to its establishing a demand against Baker & Young irrespective of the judgment. The determination of this question must depend upon the effect which our statute authorizing proceedings against joint debtors gives to such judgments, as against the defendant who was neither served with the process by which the suit was commenced, nor appeared in the suit.

2 *R. S.* 377, § 1, provides that " in actions against two or more persons jointly indebted upon any joint obligation, contract or liability, if the process issued against all the defendants shall have been duly served upon either of them, the *defendant* so served shall *answer* to the plaintiff; and in such case the judgment, if rendered in favor of the plaintiff, shall be against all the defendants, in the same manner as if all had been served with process ;" and by the second section it is declared that " such judgment shall be conclusive evidence of the liability of the defendant who was personally served with process in the suit, or who appeared therein ; but against every other defendant it shall be evidence *only* of the extent of the plaintiff's demand after the *liability* of such defendant shall have been established by other evidence.

The provisions of our former statute in relation to proceedings against joint debtors, (1 *R. L.* 521, § 13,) were essentially different from those of our present statute. They authorized a judgment against all of the defendants without *expressly* limiting its effect, except as to the execution to be issued upon it. The statute now, as we have seen, provides, that as against a defendant not served with process, the judgment " shall be evidence *only* of the *extent* of the plaintiff's demand, after the liability of such defendant shall have been established by other evidence." Under the former statute, our courts held that the judgment was *prima facie* evidence of a debt, when the defendant did not plead some matter going to the justice of the original demand. (*Dando* v. *Tremper*, 2 *John.* 87 ; *Bank of Co-*

Oakley *v.* Aspinwall.

*lumbia* v. *Newcomb*, 6 *id.* 98 ; *Taylor* v. *Pettibone*, 16 *id.* 66.) But where the defendant by his plea denied his original liability, it was held that such a judgment did not furnish presumptive evidence of the joint indebtedness. (*Carman* v. *Townsend*, 6 *Cowen*, 695 ; *S. C. in error*, 6 *Wend.* 206.)

*Marvin & Goldsmith* v. *Kumbel*, (23 *Wend.* 293,) arose under our present statute. It was an action of debt upon a judgment recovered by Kumbel in the N. Y. common pleas, in December, 1830, against Marvin & Goldsmith, where the process for the commencement of the suit was served only on Goldsmith, and Marvin did not appear. Marvin pleaded, 1. *Nul tiel record;* 2. That at the time of the commencement of the suit in the common pleas, and at the time the judgment was rendered, and during the intermediate time, he was not a citizen, inhabitant or resident of this state; that the process was not served on him in the original suit; nor did he have any notice of, or appear in the suit. There was a replication, demurrer to the replication and joinder, upon which judgment in the common pleas was rendered for the plaintiff. On the trial of the issue upon *nul tiel record,* the plaintiff gave in evidence the judgment record, in which it was stated in the usual form, that Goldsmith was in custody, &c. and Marvin was returned by the sheriff to whom the *capias ad respondendum* was directed, not found. No other evidence being given, a motion for a nonsuit was overruled, to which an exception was taken. There was a verdict and judgment for the plaintiff, upon which error was brought and the judgment was reversed, on the ground that the plaintiff could not support his action upon the judgment against the defendant not served with process in the first suit, without showing his *liability* by evidence other than the judgment, under the plea of *nul tiel record.* It was held also by a majority of the judges of the supreme court, that after such a judgment is recovered the plaintiff can not recur to the [539] original cause of action, but that his remedy on such cause of action is in the form of an action of debt on such judgment; not on the ground, however, that such a judgment creates or furnishes evidence of any liability, but evidently for the reason

that it was a convenient form of action for the recovery of the original demand from those of the joint debtors who were not, as well as those who were, served with process in the first suit. For it was held in that case, as I have already mentioned, that such judgment in the action brought upon it, furnished *no* evidence of the liability of the defendant who was not served with process in the suit in which it was recovered ; but that his liability must be established by evidence independent of the record of judgment. The provisions of the statute to which I have referred necessarily imply that the defendant who was not served with the process, and did not appear as a defendant in the suit, is not to be deemed a party for any other purpose than to enable the plaintiff to recover a regular judgment, as against the defendant who was served, without proceeding to outlawry against the other defendant, as he was required to do by the common law, in order to obtain such judgment; and to subject to the execution upon it, the personal property of the defendant not served, owned by him as a partner with the other defendant. (*Carman* v. *Townsend, supra, p.* 210.) The statute expressly saves all his other rights. First, he is not required to answer the plaintiff in the suit, and therefore can not be affected by not answering, or by the answer of his co-debtor. Second, the judgment is to be rendered against *all*, not with the like *effect*, but in the *same manner* as if all had been served with the process ; that is, in the same peculiar way, form or mode. Third, the judgment, although it is to be conclusive evidence as against the defendant who was personally served with the process, as to his liability ; yet as against the defendant not served, and who did not appear, it is not to be *any evidence* of *his liability,* either *presumptive* or otherwise; showing clearly, as I think, that it was the intention of the statute that the judgment, [540] although in form against all the defendants, should not merge the original demand in it, or create any new obligation, personal or otherwise, as against the defendant not served, or who did not appear. But as to such defendant it should have only the *form* of a judgment without any other qualities than as I have mentioned ; it can not otherwise be enforced by exe-

Oakley v. Aspinwall.

cution, nor by any action founded upon it which can be sustained by any evidence furnished by the record of judgment. It does not, as an ordinary judgment does, create a debt of record *arising* from and evidenced by matter of record. The original cause of action or demand as against such defendant, I repeat, is not changed in its nature, it does not become *res adjudicata.* It does not prevent the running of the statute of limitations against the original demand, in respect to the defendant not served, or who did not appear; although it does as against the defendant who was served or who appeared; and the reason of the distinction is, that as against the one, as a judgment it has no effect to change the nature of the original demand; while as against the other, by the judgment, a new debt is created and the old demand is thereby merged. (*Bruen* v. *Bokee,* 4 *Denio,* 56.)

How then can it be maintained, that the plaintiff as against Baker, has a demand *arising* upon the judgment recovered against him and Young in the *manner* mentioned—which, it must be admitted, if respect is paid to the language or intention of the statute, created no obligation and furnished no evidence of *liability* as against him!

In my opinion a judgment thus recovered does no more as against the defendant not served with process, than to change the form of the remedy which before existed, for the recovery of the original demand against him, to a remedy in form upon the judgment. That the legislature had the power to do that, there can be no doubt, and as it is a convenient mode, although anomalous, for the recovery of the original demand from those of the joint debtors who were not, as well as those who were served with process in the first suit, without precluding any defence which would be available to those not served, if the new suit had been brought in the former mode, giving the judgment no force or effect as evidence of the plaintiff's demand as [541] against the defendant not served, I do not see any objection to allowing the statute to have that effect.

The plaintiff's demand then, in fact as well as in law, *arose* as against Young upon the judgment, as that merged the original

demand and is conclusive evidence as against him, of his liability as adjudicated. As against Baker it arose upon the original contract, as the judgment is not any evidence against him of his liability to the plaintiff; and to that effect the plaintiff in his application for the attachment should have set forth his demand, to comply with the requirements of the statute. Not having correctly stated his demand, in his application for the attachment, I think the motion for a nonsuit should have been granted, and therefore, that the judgment of the court below is erroneous and should be reversed, and a new trial granted, with costs to abide the event.

RUGGLES, McCOUN and PAIGE, Js. concurred in opinion that the judgment should be reversed.

GARDINER, J. (dissenting.) The affidavit of Oakley, on which the attachment was issued, alledges that *John W. Baker and John Young* were justly indebted to him in the sum of twenty thousand dollars and upwards, *arising* on a certain judgment obtained in the supreme court of this state.

A majority of my brethren are of the opinion, that the joint indebtedness of these persons did not *arise* upon the judgment, and for that reason the decision of the superior court must be reversed.

The point decided assumes, (and in this we all agree,) that there was a judgment in favor of the plaintiff against Young & Baker, regularly obtained, according to the provisions of the act in relation to joint debtors, by the service of process upon Young alone. In the second place, that the recovery was for a demand, for which the defendants were originally liable as copartners and that this appeared on the face of the record.

Thus situated, the plaintiff deposed first, that he had obtained [542] a judgment. The legislature have so denominated it. Secondly, that it was against *both* defendants; the statute declares that it " shall be against *all*, in the same manner as if all had been served with process." (1 R. S. 377, § 1.) Thirdly, that *Young & Baker* were indebted to him in the sum specified,

*arising* upon the judgment. That they were jointly indebted to the plaintiff, is conceded. The question is, whether that indebtedness is to be referred to the judgment, or to the undertaking set forth in the record, upon which the judgment was rendered. It should be remembered, that the conditions of the problem to be solved, are a *joint* indebtedness upon the part of Young *and* Baker *to* the plaintiff, subsisting *when* he made his affidavit, which would maintain a *joint* suit, and result in the recovery of a judgment against the debtors jointly.

And first, the judgment mentioned was, in form and effect, a common law judgment against Young, who was served with process. (2 *R. S.* 377, §§ 1, 2.) It was more than an admission of record, that the defendants in that suit were jointly liable *originally*, for the cause of action therein stated. It concluded Young, and consequently Oakley, from thereafter alledging that Young & Baker were not, by virtue of that recovery, joint debtors by judgment. Oakley could not sue Young at law upon the judgment, without joining Baker. And if he had filed a creditor's bill upon the judgment against Young alone, although he averred that he only was served with process, it would be demurrable. (*Com. Bank* v. *Meach*, 7 *Paige*, 449 ; 4 *John Ch.* 568.) As regards Young, consequently, the original cause of action was merged in the judgment. "This is true," says Park, B. in *King* v. *Hoare*, "where there is but *one* cause of action, whether it be against a single person or many." (13 *Mees. & Welsby*, 504.) "No principle is better settled," remarks another learned judge, "than that a judgment once rendered, absorbs and merges the whole cause of action, and that neither the *matter* or parties can be severed, unless the cause of action is joint and several, which actions against partners *are not*." (9 *Serg. & Rawle*, 145.) The same doctrine was affirmed in *Robertson* v. *Smith*, (18 *John.* 480,) and in *Penny* v. *Martin*, (*supra*,) [543] in this state, and is settled if any thing be settled, by an unbroken series of authority. So absolute is the merger, that equity will not relieve, where the parties not sued were unknown to the plaintiff, when the judgment was obtained. (9 *Rawle*, and 4 *John. Ch. supra*.) The original cause of action being

merged as to Young, was extinguished as to Baker also. "Where a judgment," says Baron Parke, "has been obtained for a debt, the right given by the record, merges the inferior remedy by action, for the same debt against *another party.*" (13 *Meeson & Welsby,* 505, *and note ;* 18 *John. supra, and cases cited.*) This is admitted to be an inflexible rule of the common law, in all cases like the present.

But it is said that the defendant not served may be sued on the original promises, where the proceeding is under this statute. But in *Carman* v. *Townsend,* (6 *Wend.* 210,) the doctrine of the cases above cited was applied to a judgment under the joint debtor act. The chancellor says "the judgment was a merger of the original indebtedness, so that no action could be sustained against either of the defendants on the original promises." "The action must be debt on the judgment." This was in 1830. And in *Marvin* v. *Kumbel,* on demurrer to the replication to the second plea of the defendant, the same construction, in both particulars, was given to the present statute, and the decision of the court below, on those points, affirmed. (23 *Wend.* 302, 303.)

Again, the original promises were joint. The promise of Young was extinguished by the judgment. This has never been questioned. If that of Baker survived, so as to be the subject of an action, it must bind him, as sole promisor. But the legislature could not change the contract and make it joint and several, at the election of the plaintiff; nor have they attempted it. The statute is silent. Such an action is prohibited by the common law ; nor is there a decision or a dictum in the reports that favors it, except a remark of Judge Bronson in *Marvin* v. *Kumbel* (23 *Wend.* 298,) which was at the time repudiated by his associates. The learned judge himself admitted, that "the proceeding would be anomalous." It certainly would be ; and [544] not the less so, that the implication, on which it must rest, would be a violation of the provision of the constitution of the United States, against impairing the obligation of contracts.

The legislature have confined their action to the remedy. They have declared that the judgment shall be against *all* the joint debtors. The original contract as to all is thus merged :

Oakley v. Aspinwall.

the right of the plaintiff to bring a joint action is preserved: there is no severance of " matters or parties" which the common law forbids. On the other hand, the subsequent provision, in relation to the effect of the judgment, secures to the defendant not served with process, the privilege of any defence to an action upon the judgment, which he could make to a joint action upon the original contract. (2 *R. S.* 377, §§ 1, 3, 4, 2.) This has been the construction uniformly given to the statute. (2 *John.* 87; 6 *id.* 98; 16 *id.* 66; 6 *Cowen,* 697; *Carman* v. *Townsend, supra; Marvin* v. *Kumbel,* 23 *Wend.* 293.) No principle of pleading or law is subverted. There is no necessity, in the same suit, for a declaration in debt on judgment against one defendant, and on promises against the other, in expectation that these incongruous materials will, in some undefined way, amalgamate and form a statute judgment.

Again, by the 2d section of the act the judgment is made evidence of the extent of the plaintiff's demand *against* the defendant not served with process. If this judgment is evidence for any purpose, against Baker, in an action to charge him individually, it is because he is a party, and bound by it, to the extent prescribed by the statute. (1 *Phil. Ev.* 7th ed. 324; *Cowen & Hill's Notes,* 918.) No answer has ever been given to this argument. It has been met by an assertion, (23 *Wend.* 297,) that the judgment is made by this provision evidence not *against* the defendant, but *for* him, to limit the recovery of the plaintiff. The assumption would apply, with the same force, to the first clause of the second section, which makes the judgment conclusive evidence against the defendant served with process. It is only necessary to transpose the parties. In the second place, it implies that the revisers intended to declare, by a solemn enactment, that the plaintiff was bound by his own judgment; and thirdly, that they blundered in this work of supereroga- [545] tion, by mistaking the defendant for the plaintiff.

But it is objected, that the liability of Baker must be proved by other evidence than the judgment, and therefore his indebtedness can not arise upon it. This objection was considered in *Marvin* v. *Kumbel,* and there overruled. (*Id.* 300.) It con-

founds two matters, entirely distinct, namely, the *cause* of action and the *evidence* by which it is maintained. The 2d section of the statute provides, that " such judgment shall be conclusive evidence of the liability of the defendant served with process; but *against* every other defendant, it shall be evidence of the extent of the plaintiff's demand, after his *liability* shall be established by other *evidence*." Liability upon what, and to whom? The necessary implication from the language is, that the liability mentioned in each clause of the section, is upon the *judgment*, and in favor of the plaintiff. The record, as at common law is made, as evidence, conclusive against the defendant served, of a joint indebtedness on the judgment. The same proof, together with extrinsic evidence, connecting the other defendants with the cause of action stated in the record, is necessary to establish the same fact against them. The issue to be maintained by the plaintiff is, the joint liability of the defendants on the judgment, not that they were original joint contractors. The last is merely one fact in the chain of evidence, to establish the main issue, against a particular class of defendants. When the required evidence is given, whether by the record alone, as to the defendant served, or by the record and extrinsic evidence as to the others, it in either case establishes a liability upon the judgment, and the recovery must be upon that, as the cause of action.

Under the former statute, the debtor not served with process could, by pleading specially, compel the plaintiff to prove the original joint undertaking. (6 *Wend.* 211; 23 *id.* 296.) On the issue thus formed, the judgment was not evidence for the plaintiff; and yet no one ever doubted that it was the cause of action, and that the plaintiff must recover upon it, in debt, notwithstanding. The present statute imposes this duty on the [546] plaintiff, in all cases where the validity or existence of the judgment is denied by the defendant not brought in : and this makes the only difference between this statute and the former one.

My conclusion is, that a judgment which the statute declares shall be against both the joint debtors, which has the force of a

Oakley *v.* Aspinwall.

common law judgment against one of them, which binds their partnership property, and which according to the adjudications of our courts, for the last forty years, extinguished the original cause of action as to both of them, is incompatible with the notion that they were at the same time jointly indebted to the plaintiff, upon the promises upon which that judgment was rendered. The plaintiff so thought, and deposed that their indebtedness *arose* upon the judgment. If he has erred, and I think he has not, the error has arisen from alledging in his affidavit a conclusion of law, upon the authority of the supreme court and the court for the correction of errors. I am of opinion that the judgment should be affirmed.

GRAY, J. concurred in opinion with Judge GARDINER.

Judgment reversed.(*a*)

---

(*a*) The reasoning of Bronson, Ch. J. and of Mullett, J. in the decision of this case, goes to the full extent of holding that an action will not lie against both the debtors *on a judgment* obtained according to the provisions of the joint debtor act. Jewett, J on the other hand, is of opinion that the action may be *in form* on the judgment, and yet that the cause of action or demand does not "arise upon the judgment." This distinction, to say the least, is not very obvious. If an action may be brought on the judgment, it is not easy to see why the creditor, when he proceeds by attachment against the property of the debtors as non-residents, may not safely swear that his demand *arises* on the judgment. As, however, some of the other judges who voted for reversal may have proceeded upon the same ground with Judge Jewett, it is impossible to affirm that the case goes beyond the single proposition that the petition and oath of the attaching creditor were wrong in stating that his demand *arose upon the judgment.*

[See *D'Arcy* v. *Ketchum*, (11 *Howard Rep.* 174,) in which the supreme court of the United States seem to entertain the same opinions as those expressed by Judges Bronson and Mullett.]